JEROME J. AULL v. LIDEPA CORPORATION and E. B. LEATH-ERMAN, as Clerk of the Circuit Court, Dade County.

159 So. 808.

Division B.

Opinion Filed February 11, 1935.

Rehearing Denied March 26, 1935.

*Frederick W. Schmitz,* for Appellant;

*Albert B. Bernstein,* for Appellees.

BUFORD, J.—On June 14, 1934, appellant exhibited his bill of complaint in the Circuit Court in and for Dade County, seeking to enjoin the issuance of a tax deed under certain tax sale certificates issued August 3, 1934, by the City of Coral Gables upon the sale of lands to enforce the collection of unpaid taxes assessed for the year 1930.

On August 14, 1934, amended bill of complaint was filed. We will deal only with the amended bill of complaint. It was termed a bill of complaint for cancellation of tax certificates to quiet title and for injunction.

The salient allegations of the bill were that complainant was the owner of lots 31 and 32 in block 4, section E of the City of Coral Gables; that the lots were vacant; they had a frontage of 50 ft. and depth of 150 ft. each; that the lots were sold on August 3, 1931, for the non-payment of taxes assessed against the lots for 1930; lot 31 was sold for $65.34; lot 32 was sold for $77.94, being respectively the amounts assessed against each lot. That two lots adjoining these said lots were owned by one Louis Nixon, upon which said two lots Nos. 29 and 30, Louis Nixon had his residence; and that Louis Nixon was the purchaser of said lots Nos. 31 and 32 at said tax sale. That Nixon, on November 8, 1932, transferred and assigned the certificate to L. D. Pankey, and on April 23, 1934, L. D. Pankey assigned the certificates to the defendant Lidepa Corporation; that on May 17, 1934, Lidepa Corporation applied to the Clerk of the Circuit Court for tax deed. Whereupon notice of such application was given to the complainant and published by the Clerk of the Circuit Court warning the plaintiff that unless the certificates were redeemed on or before June 14, 1934, by payment of the amount of the

certificates, with costs and interests, amounting to a total of $220.00, tax deed would issue and complainant averred that tax deed would issue unless restrained by the court.

The bill further alleges that the tax sale certificates referred to were imposed in violation of the State and Federal Constitution, the laws of the State of Florida and the Charter of the City of Coral Gables, and constituted no valid lien or claim upon the lots, for the reason, as it is alleged, that the City of Coral Gables, through its Tax Assessor, assessed lot 31 at a valuation of $2055.00, and lot 32 at a valuation of $2465, when, in truth and in fact, said lots had a cash value not in excess of $500.00 each. That the excessive valuation so assessed against the lots were intentionally, deliberately, systematically, arbitrarily and fraudulently so assessed with the knowledge, consent and approval of the members of the Board of Commissioners and Board of Equalization of said city in power and office during that year and without regard to actual values or existing economic conditions and that the said city at that time and at all times since the creation of the City of Coral Gables, through its assessing officers, Commissioners and Boards of Equalization, had followed a deliberate scheme and taxing power of their own in place of the Constitution and Laws of the State of Florida and requirements of the City Charter in that such assessments as the assessment here involved were discriminatory in that for the year 1930, as well as during the preceding years beginning with 1925 the assessing officers of the City of Coral Gables with knowledge, consent and approval of members of the City Board of Commissioners and Board of Equalization, violated the provisions of equality and uniformity and just valuations and the laws of the City and State, "by placing no assessments whatever upon the great number of improvements,

consisting of business structures and dwelling houses in said city for the years 1925, 1926 and 1927, and by assessing but 10% of the cash value of such improvements for the year 1928, and but 20% of the cash value of such improvements for the years 1929 and 1930, as against grossly excessive valuations placed upon the vacant lots and parcels of land in said city, including aforesaid 2 lots owned by plaintiff and now sought to be made subject to the defendant's application for a tax deed; that during the spring of the year 1928 the City of Coral Gables, through its officers, agents and employees, caused to be made a full and complete appraisement of all improvements and structures throughout the city subject to taxation at the then known and existing low value of the cost of reproduction, which said appraisement was then and there adopted by the said Assessor as a basis for aforesaid 10% and 20% valuations against the improvements upon the lands or lots themselves and was adopted and used as such basis by the successor of the City Assessor for 1928 and during the subsequent years, including 1930; that aforesaid structures and improvements amounted to more than 1,800 in number; that their cash value amounted to more than $17,000,000.00, according to aforesaid official appraisement placed upon the official records of said city in the Spring of 1928, and well known to its assessing officers, to the members of said Board of Commissioners and to said Board of Equalization; that on January 1, 1930, the number of structures and other improvements upon, and lands and lots in said City of Coral Gables had increased to the extent of more than $600,000.00 according to the official appraisement of the City Assessor used by him as a basis for imposing a 20% valuation upon such new improvements for 1930 in like manner as the method pursued for the years 1928 and 1929 following

aforesaid appraisement of structures and improvements upon lands and lots made and adopted by said assessing officer in the Spring of 1928; that while said city under aforesaid scheme and method of taxation for the years 1925, 26, 27, placed no assessment valuations whatever against the great amount of structures and improvements in said city and but 10% of the value of said improvements for 1929 and but 20% of the value of said improvements for 1930, as hereinabove set forth, it did place upon the tax rolls of said city, following the collapse of the Florida boom, for the years 1926 to 1930, inclusive, assessment valuations as against the vacant lots and lands in said city, including plaintiff's lots, amounting to more than 30 times the cash value of the vacant lots or lands in 1927, down to more than 4 to 10 times the cash value of the vacant lots and lands in said city, being more than 30,000 in number and including plaintiff's aforesaid lots, for the year 1930; that said discriminatory method of assessment valuations in favor of structures and improvements, as against the vacant lots and lands in said city, during all of the aforesaid years, was intentional, deliberate, systematic, arbitrary and fraudulent and for the purpose of minimizing the burden of taxation against structures and improvements and placing the major burden of taxation upon said vacant lots; that aforesaid method of assessment was followed without any regard to the law of the land, actual value or existing economic conditions during any of the said years, including the year 1930, and that, as an illustration of the working of said unlawful and discriminatory taxing method, plaintiff would show that the Commissioners of said city holding office during the years of 1925 to 1928, themselves, profited enormously by the discrimination practiced as aforesaid, so that for three years they escaped

all taxation on their residences, shown by the above mentioned appraisement as having a value of $193,500.00, and escaped all but 10% of said valuation for 1928 and all but 20% of said valuation for the years 1929 and 1930; that the City Commissioners holding office during the years 1928 and 1929 escaped taxation for residences and dwellings owned by them altogether for three years, on a total valuation established by aforesaid appraisement of $62,500.00; that these officials escaped all but 10% of said valuation in 1928—20% in 1929 and escaped taxation on all but 20% of a total valuation adopted by the assessing officer of said City amounting to $112,500.00; that in addition to escaping taxation on aforesaid structures and improvements upon their lots, the aforesaid officials of said city escaped all taxation against the furnishings, fixtures and various equipment contained in their residences and dwellings during the aforesaid taxing years subject to taxation during said years and amounting to a sum which the assessing officers of said city might have readily obtained, but which is unknown to the plaintiff and for the ascertainment of which the plaintiff is without adequate means or facilities."

Then follows a paragraph in like phraseology alleging that the assessing officers and other named Boards of the city had during the time above mentioned purposely, intentionally, arbitrarily, systematically and fraudulently omitted from the tax roll of the said city for all of said years any and all assessment valuations against personal property within the city subject to taxation for municipal purposes and that the property so omitted amounted in value to more than Three Million Dollars; that such property was so omitted for the deliberate purpose of discriminating in favor of the owners of aforesaid personal property against the owners of vacant lots. It is alleged that the vacant lots

in the city were assessed at $28,816,575.00; that the structures and improvements on lots, with the lands on which they stood, was assessed at $3,563,795.00; that franchises and public utilities certified to the city by the State Comptroller were assessed at $175,505.00; that no assessment was made against personal property; that on this assessed valuation a tax levy of 30 mills was made.

The bill further alleges that prior to the meeting of the Board of Equalization in July, 1930, complainant protested, both verbally and in writing, against the alleged unlawful assessments and more particularly against the assessment as made on complainant's above described lots. That he appeared before the Board of Equalization during its session of July of said year and protested against the excessive and discriminatory assessment and valuations against vacant lots, including plaintiff's lots involved in this suit, and against the unlawful omission of assessments against the vast amount of personal property. That the only response to complainant's protest was that the Board of Equalization ordered all assessments against vacant lots reduced one third from the amount assessed in 1929 and then increased the millage for 1930 from 20 mills to 30 mills.

The bill contains the following paragraph:

"Owing to the grossly excessive valuations of more than 30,000 vacant lots and tracts of land in said City of Coral Gables subject to taxation for the year 1930, including the lots owned by this plaintiff, and the gross under-valuation of more than 1,800 improved properties or structures in said City subject to taxation, as hereinabove pointed out, plaintiff is unable to determine the true amount of taxes which might have been properly and legally assessed against his lots, being without adequate means or facilities to such end, but plaintiff offers to do equity and to pay such amount as

this Court can or might find to be justly and fairly chargeable against plaintiff's aforesaid lots and is ready, able and willing to pay into Court the sum of $30.00 as the sum so chargeable."

It appears to us that by the last paragraph quoted, the complainant closed the door against himself. He alleges therein in effect that he knows of no method by which he may arrive at the true amount of tax which he should be required to pay and if he knows of no way to arrive at this amount, then it is equivalent to pleading that the Court is without power to arrive at a determination of what the lawful tax should be and with this condition apparent from the beginning it was the complainant's duty to move into court to prevent the consummation of the alleged unlawful assessment before the matter reached the present stage.

The bill of complaint shows that the complainant at all times knew what the condition was; that he was cognizant of the sort of assessment that was being made and yet he stood by and allowed the assessment to stand, the taxes to become in default, other people to pay their taxes as assessed, tax certificates to issue to purchasers at tax sale, those certificates to be assigned and transferred through mesne assignments to the present holder thereof for considerable value and after the two-year period of redemption had expired then seeks to have the certificates cancelled, and to avoid the payment of any tax on his property.

The allegations of the bill of complaint are sufficient to show that the assessment was one which should have been enjoined upon timely application in that behalf, because of its discriminatory character, but this suit, coming as it does, long after maturity of the tax sale certificates and when those certificates have gone into the hands by assignment to a purchaser thereof by a third person, is too late to avail

416

the cancellation of the certificates. See D. Lee v. Booker & Co., 108 Fla. 534; 146 Sou. 546; Tax Securities Corp. v. Manatee Corporation, *et al.*, 115 Fla. 655, 155 Sou. 742.

For the reasons stated, the order dissolving temporary restraining order and dismissing the bill of complaint should be affirmed and it is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and DAVIS, J., concur in the opinion and judgment.

BROWN, J., dissents.