W. L. Draughon, as Clerk of the Circuit Court for Lee County, Florida, and Seville Holding Company, a Corp., v. Florida Heitman, individually and as Trustee of the Estate of Harvie E. Heitman, deceased, and Lorraine Heitman, a single woman.

W. L. Draughon, as Clerk of the Circuit Court for Lee County, Florida, and Seville Holding Company, a Corp., v. Pinellas Groves, Incorporated.

168 So. 838.
Division A.
Opinion Filed February 19, 1936.
Rehearing Denied June 29, 1936.

*Maguire & Voorhis,* for Appellants.

*Sheppard & Clements, W. J. Wood* and *Jim C. Clements,* for Appellees.

DAVIS, J.—In 1931 complainants in the court below were owners of a parcel of taxable real estate described in the bill as the Earnhardt building, which was assessed on the tax rolls of Lee County in the amount of $3510.00. That the property so assessed was income-producing property is a legitimate inference to be drawn from the description of it set forth in the pleading. Furthermore, that complainants did not pay, nor offer to pay, any taxes upon this real estate for the year 1931, or for any year since that time, is apparent also from the bill. Thus it was that as a direct result of complainants' delinquency in failing to pay their taxes on the parcel of income-producing real estate the property was sold in 1932 for such taxes. Under date of February 20, 1935, the holder of the tax certificate representing the sale applied for a tax deed to be issued pursuant to law. This suit, in the court below, was brought to have a decree entered cancelling as a cloud upon complainants' title the tax certificate issued thereon for the 1931 taxes

and to have complainants' title to said Earnhardt building, the subject of the tax sale, established, quieted and confirmed as against the attempt of the holder of the tax certificate to obtain a tax deed pursuant to law in the event that the taxes assessed against complainants, with penalties imposed incident thereto, are not paid.

No complaint is made as to the manner of assessing the taxes for which the tax deed is about to issue. For aught that appears to the contrary, the tax imposed as a real estate tax is a just and proper one. It is only because of its alleged relationship to the acts of taxing officers with respect to other taxes on other classes of property that the enforcement of said taxes on complainants' real estate is alleged to be illegal. That complainants have stood silently by since 1931 without making any attempt to have rectified the conditions they complain of is admitted by the bill. Indeed, the complainants practically concede in their pleading that prior to the application for a tax deed upon their property they had no real objection to the validity of the taxes involved in this proceeding, because they undertake to excuse their non payment of the taxes by averring that for almost four years they have been attempting, without success, to borrow sufficient money to pay the taxes assessed on their real estate.

Sympathetic though we may be with the plight in which these ladies, who are complainants in this suit, may now find themselves (their condition, however, is no different from that of a great many other people who attempt to hold extensive holdings of real estate, the taxes upon which they are unable to meet), we are unable to agree with the conclusion that the bill of complaint in this suit states a cause for equitable relief of any character whatsoever. If it does, then by the same token there is not a single taxpayer in

the State of Florida from the richest corporation to the poorest land owner who may not avail himself of a stereotyped copy of the present bill of complaint as a means of defeating the collection of any of the real estate taxes which may have been assessed and put on the tax rolls for the year 1931.

The sovereignty of the State of Florida depends upon its ability to enforce its laws for the levy and collection of taxes essential to support the government, the public schools, and the many objects of public enterprises which have gradually, in the course of governmental progress, become a part of the financial requirements of our commonwealth. That sovereignty is just as much defeated by refusing to give a remedy due by law to a tax certificate purchaser who has bought a certificate on property put up by the State and sold to the highest bidder as a means of compelling the taxpayer to pay what is due, as it would be defeated if the tax itself was entirely left off the roll.

A tax assessment without the ability of the State to sell the subject of the assessment if the taxes are not paid would be a mere *brutum fulmen*. Without buyers a tax sale would be a fruitless gesture. Without giving to the buyers some fair assurance that what the State holds out to them to be purchased is an enforceable lien against the affected delinquent tax property there will be no incentive to buyers to participate in tax sales. And the final result will be that every item of taxable property in the State of Florida will, of necessity, be knocked down and sold to the State to be held *ad infinitum* exempt from taxation, although the enjoyment of the property is continued in the hands of the delinquent owner who may still collect all available revenues therefrom and use them as he pleases to the prejudice of that uninformed class of simple minded

souls who may unwittingly fail to appreciate the benef-
icences that legal technicalities of a kindly State holds in
store for those who, like the prodigal son of Biblical times,
may profit by their prodigality.

The taxpayers in this case are utterly without standing
in a court of equity to complain of some fanciful increase
in taxes by reason of the alleged failure of the tax assessor
of Lee County to do his duty in placing on the tax rolls
the large amounts that are allegedly liable on tangible prop-
erty subject to taxation in that county, after waiting for
four years, or more, to complain of the alleged dereliction
in duty.

The constitutional amendment to Section 1 of Article
IX, ratified in 1924, separately classified intangibles for tax
purposes and made the same no longer subject to general
property taxation in the same class as tangible personal
and real property. The adoption of that amendment re-
quired special statutory action by the Legislature to put it
into effect. Therefore it was not self executing. This is so,
because under the terms of the amendment itself intangible
property became subject only to special taxation as a sep-
arate class at "special rate or rates" to be so levied by the
Legislature that "the taxes collected therefrom" could be
apportioned by the Legislature to some legislatively declared
object and so as to be "exclusive of all other state, county,
district and municipal" taxes on the same property.

Prior to enactment of Chapter 15789, Acts of 1931, which
did not become effective until January 1, 1932, the State
Legislature had provided no means for executing the pur-
pose and intent of the 1924 constitutional amendment on
the subject of taxation of intangible personal property.
That amendment, be it observed, limited the taxation of in-
tangible property at a rate not to exceed five mills on the

dollar and required such rate to be fixed by the Legislature, but between the date of ratification of the constitutional amendment of 1924, and the convening of the 1931 Legislature, no legislative attempt to carry out the provisions of the amended Constitution was successful. Therefore the status of the intangible property of all kinds, insofar as the taxes of 1931 are concerned, was at all times, to say the least of it, doubtful. In view of this fact, how can it be truthfully alleged *as a matter of law,* that the tax assessor of any particular county, such as Lee County, committed a legal fraud upon other taxpayers by deliberately, illegally, willfully, intentionally, arbitrarily and systematically omitting from the tax rolls of his county intangible property, since it was only subject to a special and limited kind of taxation, the provision for imposing which the Legislature had never carried into effect insofar as that year was concerned?

Our view is that the separate constitutional classification of intangibles for taxation provided for by amended Section 1 of Article IX at special rate or rates for any purpose that the Legislature should elect to apportion the proceeds (that is, for any state, county, municipal or school purpose the Legislature selected as the object of an appropriation of such taxes when collected) so takes intangibles out of the class of general taxable real and tangible personal properties in this State that no general property taxpayer can legally avoid the payment of his general property taxes otherwise lawfully levied, assessed and made enforceable for ordinary state, county, municipal and school purposes through local taxing processes, on the ground of alleged discrimination in omitting to tax intangible properties in any year that intervened between the 1924 ratification of the intangible property tax amendment and the 1931 Act of

the Legislature which first put that amendment into practical operation as of January 1, 1932.

But let us assume that intangible properties had been placed upon the tax rolls of Lee County for the year 1931, even though Chapter 15789, Acts of 1931, was not then in effect. At what rate of taxation (which could not exceed the over all constitutional limit of five mills) would such intangible properties have been taxed and for what purposes would the taxation have been levied? For the year 1931 the Legislature made no provision for the separate taxation of intangible property as contemplated by the 1924 constitutional amendment. Even prior to the 1924 constitutional amendment serious doubt existed as to whether intangibles were comprehended within the scope of Section 1 of Article IX at all. The fact is that for practically every year from the adoption of the Constitution itself in 1885 until the Legislature considered the subject in 1923, intangible properties had in practical effect, if not in law, been actually exempted from taxation in this state by a universal concert of action on the part of the tax assessors in not attempting to place any such properties on the ordinary tax rolls. The only exception that I can recall to this practice occurred in a West Florida county where a newly moved in citizen from another state returned his intangibles for taxation, although he was the only one in his county who did so, and later sought judicial relief for his mistake in so doing. Hunter v. Turner, 44 Fla. 654, 45 Sou. Rep 509.

In this case the gist of the complaint asserted against the collectibility of complainants' real estate taxes is that the tax assessor of Lee County failed to put intangibles of any kind on the general property tax roll for that year—an omission that cannot be said to have been wrongfully, ar-

bitrarily, systematically and intentionally done because of the doubt existing at that time as to whether intangibles were subject to taxation at all except under the 1931 Act of the Legislature, which did not go into effect until January 1, 1931.

But let us suppose the tax assessor was wrong and that he should have placed upon the general property tax roll of Lee County for 1931 all intangible properties that were subject to taxation in that county and that he should have placed them on such roll for taxation at the ordinary rates and for the ordinary purposes applicable to real property and tangible personal property. Does the omission of the tax assessor so to do entitle a real estate taxpayer who is delinquent in his real estate taxes for four years to now complain of that omission, in view of the circumstances that he has stood by for a period of time that has rendered it impossible for the state to rectify the error by back assessing the omitted intangibles for the year 1931—the three-year period for back tax assessments having now expired? Certainly this is laches if that word still has any meaning as applied to delinquent taxpayers as distinguished from other litigants.

If the bill of complaint in this case shows the invalidity of the tax rolls of Lee County, then every tax roll in the State of Florida could be invalidated *prima facie* by the same allegations if filed in a bill of similar import. This could be immediately done by numbers of other delinquent real estate taxpayers who have waited until it is too late to "back" assess the alleged omitted intangible property whose exemption from taxation because of failure to assess same is the gravamen of complaint. Any judicial opinion fraught with such consequences involves a consideration which alone, it seems to me, should be sufficient to dem-

onstrate the inequity of what is now sought to be pleaded as equity.

In the case of Liggett v. Lee, 288 U. S. 517, 53 Sup. Ct. Rep. 481, 77 L. Ed. 929, 85 A. L. R. 699 (which was an appeal from the Supreme Court of Florida and involved Florida law on the subject of taxation), the bill of complaint alleged that the state officials charged with *enforcing* the administration of a special tax had failed to demand the special tax *and did not intend to collect it* from those liable. The prayer was that in order to rectify such alleged wrong in a court of equity that the court of equity should commit a further inequity by releasing complainant from his own liability for the tax it was alleged was being forgiven to others having the favor of the tax officers.

In support of its plea in that case, complainant relied upon precisely the same line of reasoning and authorities supporting same that were the occasion for this court's decision in West Virginia Hotel Corp. v. Foster Co., 101 Fla. 1147, 132 Sou. Rep. 842—a doctrine which is proper in its limited phase of application, but not proper in a case like this, nor one to be extended beyond the narrow range of its controlling effect.

In rejecting the complainant's plea for relief by equitable interference with the tax collecting processes of the State of Florida because of alleged deprivation of the equal protection of the laws and taking of property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution, the Federal Supreme Court had this to say on the subject:

"The bill avers that the state officials charged with the administration of the Act have failed to demand the tax and do not intend to collect it from the owners of stores in certain lines of business, such as furniture dealers. This al-

leged official dereliction is claimed to be an unconstitutional discrimination in the enforcement of the Act. For this proposition appellants rely upon decisions such as Cumberland Coal Co. v. Board of Revision, 284 U. S. 23, and Iowa - DeMoines Nat. Bank v. Bennett, 284 U. S. 239, holding a failure to assess all property taxed ad valorem at the same proportion of its value to be a denial of equal protection. The principle upon which these cases rest is that where a statute lays a tax upon property ad valorem at an even and equal rate, discrimination may result from the fact that the assessing officials systematically and intentionally value some property subject to the tax at a proportion of its true value different from that fixed with respect to other like property. They do not support the appellant's contention that where the taxing officials fail and neglect to exact the tax from some persons alleged to owe it, all others who are subject to the levy are exempt. This Court has said that in the case of unequal and discriminatory assessment, to hold that the complaining taxpayer's only remedy is to have the assessment on all the other property raised to a level with that of his own is in effect to deny any remedy whatever. As a consequence redress is afforded by requiring the assessing body to revise the complainant's assessment to the level of those upon other like property. Appellants insist that by analogy they are entitled to be exempt, if others are improperly relieved from taxation.

Under the law of Florida every unit of the taxpaying public has an interest in having all property subject to taxation legally assessed, and may in behalf of himself and others in like situation require that all property subject to taxation be placed on the tax books *and bear its proportionate part of the expense of government.* The appellants, if

they deem the tax illegally omitted in certain cases, may apply for a writ of mandamus to compel the taxing officials to do their duty. State, *ex rel.* Dofnos Corp. v. Lehman, 100 Fla. 1401, 131 Sou. Rep. 333. Failure to collect the tax from some whose occupations fall within the provisions of the Act, *cannot excuse the appellants from paying what they owe. And certainly the remedy afforded by state law assures them equal treatment with all others similarly situated.*" (Emphasis supplied.) See pages 539-540, 288 U. S. Rep.

In this case, appellants as real property owners were no doubt entitled to equal treatment in the administration of the tax laws with owners of intangible property.

But the Constitution and laws of Florida have separately classified and taxed intangibles at special rates for different public purposes than ordinary real and personal property is provided to be taxed.

Whatever wrong was done to these appellants in the situation they attempt to complain of was committed by the Legislatures of 1927 and 1929 in failing to pass necessary statutes to give effect to the 1924 constitutional amendment to Section 1 of Article IX of the Constitution.

If the failure of the Legislature to act left intangibles subject to taxation on the general tax rolls as ordinary property, that wrong was plainly remediable by mandamus during that year or during the three years that succeeded it to allow for "back" assessments in accordance with general law.

Notwithstanding the existence of such plain, adequate and complete remedy on their part, appellants have waited until 1935 to seek a remedy in equity the effect of granting which will not be to enforce equal treatment in the administration of the tax laws, but to create in favor of

appellants, and appellants alone, a further and more generous discriminatory exemption in the form of relief not only from state taxes, but county and school taxes as well.

Our view is that the appellants' suit is without equity and that the decree should be reversed and the bill dismissed attended by a dissolution of the injunction granted pursuant thereto.

It is so ordered.

WHITFIELD, C. J., and TERRELL and BUFORD, J. J., concur.

ELLIS, P. J., and BROWN, J., dissent.

BROWN, J. (dissenting).—Both of the above entitled cases involved the same questions. The material facts in both cases are the same; both involve appeals from orders granting a temporary injunction against advertising of notice of application for tax deeds and the issuance of tax deeds. The order in the Heitman case was entered on February 12, 1935, and the order in the Pinellas Groves case was granted on the same date, and appeals were immediately taken from both orders to this Court, and the two cases were consolidated for consideration here. Applications for supersedeas were made, and this court made an order superseding that part of the orders appealed from which restrained further publication of notice of application for tax deeds, but denied supersedeas as to that part of the orders restraining issuance of tax deeds until further order of the court.

Florida Heitman, a widow, and Lorraine Heitman, a single woman, both residents of Lee County, Florida, filed their bill against W. L. Draughon as Clerk of the Circuit Court for Lee County, and Seville Holding Company, a Florida corporation, praying that necessary procedure and accounting be had for determining the amount of taxes due by plaintiffs for the year 1931, and that the court fix the

amount thereof, and enter a decree cancelling as a cloud upon plaintiffs' title the purported tax certificate based on the 1931 assessment, and that the clerk of the Circuit Court be temporarily enjoined from further publishing notice of application for tax deeds on plaintiff's property, and from issuing to the defendant, Seville Holding Company, any tax deeds thereon, and that on final hearing said injunction be made permanent.

The bill alleged that the plaintiffs are the owners of certain described real estate in the City of Fort Myers, upon which is located the Earnhardt Building. It is further alleged:

"That under the Constitution and Laws of the State of Florida, the tax assessor of Lee County, Florida, for the year 1931 was required to assess all property, both real and personal, at a uniform and equal rate, at its true cash value, but in the preparation of the tax assessment rolls of the taxable property in and for Lee County, Florida, for the year 1931, the said tax assessor illegally, intentionally, willfully, arbitrarily and systematically disregarded the Constitution and Laws of the State of Florida, in that he did illegally, willfully, intentionally, arbitrarily and systematically, during said year omit from the said rolls of taxable property in Lee County, Florida, all intangible personal property belonging to residents of Lee County, Florida, and subject to taxation in and for Lee County, Florida, for the year 1931, to the value of at least $7,000,000.00. By way of illustration of the illegal, deliberate, willful, intentional, arbitrary and systematic omission from said tax rolls of said intangible personal property, plaintiffs show that on January 1, 1931, there were of record in the office of the Clerk of the Circuit Court of Lee County, Florida, mortgages, subject to taxation as aforesaid, owned by the respective

persons, firms or corporation, residents of Lee County, Florida, as named below, in the amounts set opposite their respective names: (listing them by name and amounts), the principal amount of said mortgages totalling $2,546,-370.59 and that said tax assessor deliberately, illegally, willfully, intentionally, arbitrarily and systematically omitted all of said mortgages from said tax roll for the purpose of taxation during the year 1931. Plaintiffs aver that the foregoing are merely instances among many of the deliberate, illegal, willful, intentional, arbitrary and systematic omission of all intangible personal property from said tax rolls for the year 1931, and do not show the full extent of omissions therefrom.

"Plaintiffs further aver that during the entire year 1931 they owned a large amount of real estate in Lee County, Florida, in addition to the Earnhardt Building; that the total real estate assessment roll for Lee County, Florida, for said year amounted to $4,169,400.00, and of this total amount so assessed against real estate in Lee County, Florida, plaintiffs' real estate situated in said county was assessed at $241,540.00; that at no time during the year did plaintiffs own any intangible personal property of value excepting a comparatively negligible amount, to-wit, mortgages in the principal amount of $38,354.87; and so it is, that plaintiffs were substantially and materially injured by the said action of the tax assessor of Lee County, Florida, in so omitting all intangible personal property from the tax rolls of Lee County, Florida, and that had intangible personal property been placed upon the tax rolls of Lee County, Florida, for the year 1931, as required by law, the millage levied against said Earnhardt Building for the year 1931 would have been greatly reduced."

It is further alleged that plaintiffs' said building was

assessed for the year 1931 a tax in the amount of $3,510.00; that plaintiffs did not pay said tax and on August 1, 1932, the tax collector of Lee County sold said building and issued his tax certificate No. 1193, to the Treasurer for the State, reciting the sum bid together with costs and charges to be $3,689.25; that on June 18, 1935, said clerk sold and transferred said certificate to the Seville Holding Company and that said company had made application to said clerk for the issuance of a tax deed and that the clerk had begun the publication of such application.

The bill charged that the entire tax roll for Lee County, for the year 1931 was invalid, but offered to pay all taxes due for that year, yet made no actual tender of money, alleging that plaintiffs were unable to do so because it was impossible for plaintiffs to determine the amount due for that year by reason of said illegal preparation of the 1931 tax roll. Plaintiffs offered to pay that portion of the tax assessed against said Earnhardt Building which the court might decree to be legally due thereon.

In the case of West Virginia Hotel Corp. v. W. C. Foster Company, 101 Fla. 1147, 122 So. 842, it was said:

"This court, in Roberts v. American National Bank, 94 Fla. 427, 115 So. 261, held that the statutes of the State of Florida require that all property, real and personal, in this State, and all personal property belonging to residents of the state, not exempted by statute, shall be subject to taxation; and when property subject to taxation, substantial in value, is deliberately or intentionally omitted from the assessment roll by an assessor with knowledge of its liability, a right of complaint is thereby given against the entire assessment to any one whose burdens are unduly increased by such omission. See also, City of Tampa v. Kaunitz, 39 Fla. 638, 23 So. 416, 63 Am. St. Rep. 202;

Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 So. 503; Cooey v. Johnson, 95 Fla. 946, 117 So. 111; Folsom v. Bank of Greenwood, 97 Fla. 426, 120 So. 317.

"But it is a general principle that one will not be heard to complain of action that was not injurious to him. Complainant must show that he has suffered, or will suffer, injury. 4 Cooley on Taxation (4th Ed.) Sec. 1655; Folsom v. Bank of Greenwood, 97 Fla. 426, 120 So. 317-318."

And the 10th headnote of said case reads as follows:

"Where a tax assessment is wholly illegal and void, a complaining taxpayer attacking such an assessment will not be required, as a condition precedent to maintenance of suit, to pay or tender into court any portion of such tax; but, where the alleged illegality consists of an overvaluation and excessive assessment of complainant's property as compared with other property of the same class, and the bill seeks the cancellation of the tax assessment on the ground of such overvaluation, à court of equity may require the complainant to pay into the registry of the court a sum sufficient to cover such proportion of the assessment which the allegations of the bill show could have been legally assessed against complainant's property."

The bill in this case measures up to the requirements laid down in the case quoted from, and the other Florida cases therein cited, in that it alleges that the tax assessor intentionally, willfully, arbitrarily and systematically omitted from the rolls of taxable property in Lee County, in said year 1931, all intangible personal property belonging to the residents of Lee County and subject to taxation to the value of at least $7,000,000.00; citing particularly certain mortgage totaling $2,546,370.59; and showed that this omission of intangible property was injurious to the plaintiffs because plaintiffs' real estate situated in said county was

assessed at $241,540.00, whereas the total value of their intangible personal property during said year did not exceed $38,354.87.

But appellants contend that the bill was insufficient, and without equity, by reason of the holdings of this Court in several more recent cases, to-wit: Aull v. Lidepa Corporation, 118 Fla. 408, 159 So. 808; Devane v. Leatherman, 113 Fla. 216, 151 So. 530; Hackney v. McKenney, 113 Fla. 176, 151 So. 524; Lee v. Booker & Co., Inc., 108 Fla. 534, 146 So. 546; Ranger Realty Co. v. Hefty, 112 Fla. 654, 152 So. 439; Tax Securities Corporation v. Manatee County, 115 Fla. 655, 155 So. 742.

In the Aull v. Lidepa Corporation case, above cited, it was held that the allegation in the bill that complainant knew of no method for arriving at the true amount of tax barred relief, being equivalent to pleading that the court had no power to determine the lawful tax, and that while the allegations of the bill were sufficient to show that the assessment could have been enjoined upon timely application, because of its discriminatory character, yet that suit, coming as it did long after the maturity of the tax sale certificates and when those certificates were in the hands of a third purchaser, was filed too late. The gravamen of this decision appears to be that the defendant had been guilty of gross *laches*.

In Devane v. Leatherman, *supra,* it was held that equity will grant relief against tax certificates held by a third person issued upon excessive tax assessments only in the clearest and most urgent cases, and then only after the complainant has first tendered and paid into court the lawful amount of taxes that could have been assessed against his land in lieu of the alleged excessively assessed taxes; that the law presumes that every property owner, not affirma-

tively shown to be exempt, is due some amount of taxes for every tax year.

In Hackney v. McKenney, *supra,* it was held that equity will not afford immunity from taxation merely because of inequality in the assessment roll which could have been remedied in time to permit a proper assessment; that a taxpayer who failed to institute proceedings to correct assessments was not entitled, after taxes became due, to have entire assessment rolls invalidated and collections thereunder enjoined on ground of omission of property, where plaintiff failed to pay or to offer payment of valid tax; that liability for *ad valorem.* taxes in Florida does not depend on a proper assessment; that a taxpayer, who, on making tax return, discovers that the taxable property of others was not duly assessed, may require assessing officers to do their duty, if his taxes would be substantially increased.

In the case of Lee v. Booker, *supra,* it was held that the law contemplates that individual complaints regarding assessed valuations shall be submitted to equalizing boards, and that a tax paid on overvaluation may be waived by the taxpayer's failure to draw attention to same within reasonable time or before a third person's rights accrue.

The case of Ranger Realty Co. v. Hefty, *supra,* held that a property owner can seek relief from an illegal tax levy or assessment without paying or offering to pay a tax where the tax was not authorized, but those taxes which were duly levied and could have been legally assessed must be paid as a condition to obtaining equity relief from an illegal assessment or excessive valuation. That in cases where the property owner suing to cancel the tax assessment and tax certificate, does so on the ground of irregularity in the assessment, sale and issuance of certificates, he must pay tax justly due. But in the opinion in that case it was said

that: "Where the validity of the entire tax is contested, the complainant will not be required to pay any part of the tax as a condition to the granting of a preliminary injunction."

The case of Tax Securities Corporation v. Manatee County, *supra,* was a suit to foreclose the lien of tax sale certificates representing unpaid taxes for the year 1925. The bill was filed in October, 1931, and the defendant, by answer filed in 1933, attacked the validity of the tax certificates on several grounds, among them being the intentional and systematic omission by the tax assessor of "enormous amounts" of intangible property owned and held by persons residing in Manatee County during said year of 1925, and specified the names of said persons holding certain mortgages and moneys on deposit; the aggregate amounts of said omitted personal property was alleged to have exceeded the total amounts of the assessment roll for said county for each of the years involved; that said defendant (Myakka Company) was a non-resident and had no intangible property in Florida on January 1, 1925, or any time subsequent thereto, and that this cause of action had resulted in placing exorbitant value on real estate, the denying to the defendant of the equal protection of the law, and the deprivation of his property without due process of law, etc. In that case it was said:

"The defendant avers the ownership on January 1, 1935, of lands involved in this suit, and is held to know of the provisions of the statutes which impose the lien as of January 1st of each year, which require the sale of property for non-payment of taxes, which authorize the issue, redemption and sale of tax sale certificates for unpaid taxes for each year; which authorize the foreclosure of tax sale certificates so that an indefeasible title may be conveyed to

a purchaser under a foreclosure decree. Defendant also had the special privileges of redemption conferred by Chapter 14572, Acts of 1929, and other statutes, yet it is not shown that any effort was made to pay taxes imposed by law or to redeem from the tax sale certificates, or to in any way adjust the tax liens."

"Defendant's lands were assessed for taxes as of January 1, 1925, and it does not appear that any steps were taken to pay the taxes, or to contest or to adjust the amounts assessed on the lands or to redeem the lands after they were sold for non-payment of taxes, though statutes offered special inducements and facilities for adjustments of past due taxes which constitute first liens on the land. In the meantime complainant purchased the tax sale certificates covering large areas of land including lands of the answering defendant. The answer of the defendant filed February 8, 1933, does not show void or illegal assessments of defendant's lands; and if such assessments are voidable, the defendant has neglected to seek administrative relief under the statutes or judicial relief during the years the taxes have been a first lien on the lands. Defendant still has the right to redeem its lands pending foreclosure decree; but it cannot now be heard to assert its challenge as made to the entire assessment rolls for several years, when it has not paid any taxes on the land, and has so long neglected to avail itself of remedies afforded by law, and others have bought tax sales certificates which it could have redeemed to its great advantage. See principles announced in Lee v. Booker & Co., Inc., 108 Fla. 534, 146 So. 546; W. Va. Hotel Corp. v. Foster Co., et al., 101 Fla. 1147, 132 So. 842; Hackney v. McKenney, 113 Fla. 176, 151 So. 524. See also DeTreville v. Smalls, 98 U. S. 517, 25 Law Ed. 174;

Florida Savings Bank v. Brittain, *et al.,* 20 Fla. 507, text 514."

As the case of West Virginia Hotel Corp. v. Foster Company was cited with apparent approval in the case of Tax Securities Corp. v. Manatee Company, it was evidently not intended that the former case should be overruled. Indeed, in none of these recent cases, which are relied upon by appellants was the West Virginia Hotel case expressly overruled, and it was cited with approval and followed in the case of City of Tampa v. Colgan, 111 Fla. 538, 149 So. 547. It will have been noted that in the Tax Securities Corporation case, the Myakka Company did not challenge the validity of the entire assessment roll until after eight years had elapsed, as its answer raising that question was not filed until 1933; so that case appears to have been decided, fundamentally, upon the ground of *laches,* as is indicated by the headnote.

In this case the suit was filed February 12, 1935, attacking the validity of the assessment roll for 1931; so less than four years had elapsed. Furthermore, it is alleged that the plaintiffs, a widow and a single woman, had never been engaged in any business connected with public records, but had been engaged solely in leasing property which they had acquired by inheritance from the deceased husband and father, respectively, and were innocently ignorant of the public records and particularly of the omission by the tax assessor of all intangible personal property in the preparation of the tax roll; that they relied upon the tax assessor to perform his duty as required by law; and had no knowledge that he had failed to do so until a few days prior to the institution of this suit and after the tax sale certificate had been purchased by the Seville Holding Company; that it was only after the application for tax deed was made that

they consulted attorneys and learned for the first time of the illegal acts of said tax assessor; that they acted diligently and promptly, and filed this bill as soon as possible after learning of such illegal action. That on the other hand, the defendant, Seville Holding Company, was in the business of buying tax sale certificates in Lee County and over the State at large, and knew of or should have known of such illegal action on the part of said tax assessor, and had as much or better opportunity of knowledge of said illegality as had these plaintiffs.

We hold, therefore, that on the face of the bill, there was no such showing of *laches* as would have shown the bill to be so devoid of equity as to put the chancellor in error for granting the temporary injunction.

In Cooley on Taxation, 4th Edition, Section 1548, at page 3016, it is said:

"A tax sale is the culmination of proceedings which are matters of record; and it is a reasonable presumption of law that, where one acquires rights which depend upon matters of record, he first makes search of the record in order to ascertain whether anything shown thereby would diminish the value of such rights, or tend in any contingency to defeat them. A tax purchaser consequently cannot be, in any strict technical sense, a *bona fide* purchaser, as that term is understood in the law; because a *bona fide* purchaser is one who buys an apparently good title without notice of anything calculated to impair or affect it; but the tax purchaser is always deemed to have such notice when the record shows defects."

And in Brown v. Snell, 6 Fla. 741, it was held that:

"A purchaser at a tax sale purchases at his peril and he must see to it that the sale is valid."

If time permitted, the writer believes that he could distinguish the cases relied on by appellants, and above cited, from the case at bar, as most of them were based on a different state of facts and in none of them was the case of West Virginia Hotel Corporation v. Foster Company expressly overruled; and, as above pointed out, if that case be upheld, the appellees' bill contained equity and the order appealed from should be affirmed. The West Virginia Hotel Corporation case announces no new or original doctrine. It merely applies old principles to a new and unusual state of facts. The principles of law enunciated in that case were mere reiterations of what had theretofore been decided by this Court in a long line of cases, some of which are cited in the opinion. The writer is free to confess that some of the more recent cases, relied on by appellants, and above cited, contain expressions which are to some extent at variance with the West Virginia Hotel Corporation case, but inasmuch as that case was not expressly overruled, said decisions might each have been placed upon other grounds than those which would conflict with the earlier cases. In any event, it appears to the writer that inasmuch as the West Virginia Hotel Corporation case was cited with approval in most of those opinions and has never been overruled by the Court, the plaintiffs in the court below, appellees here, had a right to rely upon it, and it appearing that the plaintiffs' bill contained equity under the principles announced in that case, the order of the court below should be affirmed.

As the two cases are identical, I think that the order appealed from in the case of W. L. Draughon, as Clerk, etc., and Seville Holding Company v. Pinellas Groves, Inc., should likewise be affirmed.

ELLIS, P. J., concurs.