WEST VIRGINIA HOTEL CORPORATION, *Appellant*, vs. THE W. C. FOSTER COMPANY, a corporation and J. R. DUGGAN, as City Clerk of the City of West Palm Beach and FRANK C. GRIMES, as Tax Collector of the City of West Palm Beach, Florida, *Appellees.*

Division A.

Opinion filed March 13, 1931.

1148

*H. J. Quincey* and *L. S. Gaulden,* attorneys for the Appellant;

*Joe Hatfield* and *J. Mark Wilcox,* attorneys for the Appellees.

BROWN, J.—The complainant, appellant here, filed its bill to enjoin the issuance of a tax deed applied for by the W. C. Foster Company as the holder of a tax sale certificate of the City of West Palm Beach against appellant's property. The certificate was issued in 1927 upon the sale of the property for non-payment of the City taxes for the year 1926. Complainant's property consisted of a portion of three lots in the City of West Palm Beach, upon which it had constructed a 72-room Hotel. It is also alleged that the property was sold for non-payment of the City taxes for the year 1927, and that at said sale one D. Lee, agent of the Foster Company, had become the purchaser, and was again sold for non-payment of the taxes for the year 1928, one G. Fillo becoming the purchaser; that the Foster Company, or some agent thereof, had paid the City Tax Collector said taxes and had purchased or redeemed the tax sale certificates which had been issued to D. Lee and C. Fillo, and had made application for the issuance of a tax deed under the first named tax sale certificate issued in

1927 for the failure to pay the said taxes for the fiscal year beginning in 1926, and that the Tax Collector had started publication of notice as required by law.

The bill was filed in September, 1929, and attacks the validity of the assessment rolls for each of the years 1926 to 1929 respectively.

The theory of the bill is that the entire assessment rolls, for each of the tax years named, were illegal, null and void. It prays that the issuance of the tax deed be enjoined and that the certificates as well as the assessment for 1929, be cancelled as clouds on the title.

The city assessment rolls for the years 1926 and 1927 are attacked upon substantially the same grounds. Some of those grounds are omitted from the allegations attacking the assessments for 1928 and 1929. The attack on the assessment roll for 1929 is, however, practically abandoned in the brief, counsel for appellant stating that they had been erroneously informed by the deputy city clerk that at the time of applying for tax deed the Foster Company had paid the 1929 taxes, and had so alleged in the bill, but that this was an error; that the taxes for 1929 were not due until November 1, 1929, whereas the bill was filed Sept. 27, 1929. In passing upon the correctness of the chancellor's rulings, we will of course, consider the allegations of the bill just as they appeared when submitted to him.

A temporary injunction was granted by the court on the day the bill was filed. Subsequently a demurrer to the bill was filed by the defendants. By a consent order, the complainant was permitted to file an amended bill, the demurrer to the original bill to stand as the demurrer to the amended bill.

The cause coming on to be heard upon the demurrer, affidavits and motion to dissolve the temporary injunction

and dismiss the bill, the chancellor on April 7, 1930, made an order in which he stated that he considered that the bill had equity in so far as it related to the tax on personal property, the remainder of the order reading as follows:

"In so far as the bill relates to the alleged invalid assessments on real property, I believe that there will be equity in the bill, if complainant shall pay into court that portion of the tax which the bill, in effect, admits has been justly levied against the real property of the complainant; Thereupon

It is ordered, adjudged and decreed that the demurrer be overruled;

It is further ordered, adjudged and decreed that if complainant shall, within fifteen days from date, pay into the registry of the court 75% of the tax—exclusive of interest—levied on the respective parcels of real property for the years 1926, 1927, 1928 and 1929, to be applied in payment of said taxes as the Court may hereinafter direct, then the motion to dismiss be and the same is hereby denied; and

It is further ordered, adjudged and decreed that if the complainant shall fail to make such payment, then the motion to dismiss shall be granted as to the defendant W. C. Foster Company, a Corporation, and that the temporary injunction heretofore granted be and the same is hereby vacated; and

It is further ordered, adjudged and decreed that the defendants further plead within thirty days from date.

The complainant appealed from so much of said order as related to the requirement that the complainant pay into the registry of the court 75% of the tax on the real property for the years 1926 to 1929 respectively, and that upon failure to do so, the motion to dismiss would be granted and the injunction vacated, and have assigned the same as

error. The defendants entered a cross appeal and filed cross assignments of error, attacking the overruling of their demurrer, and the failure of the court to grant defendant's motion to dismiss and to vacate the injunction unconditionally. So, as frequently happens, the court's action was not entirely pleasing to either side.

The bill attacks the validity of the assessment roll of the years 1926 and 1927 upon several similar grounds.

Taking them up in the order in which they are summarized in appellant's brief, the first ground of attack is that in the preparation of the roll for 1926 the city tax assessor intentionally, arbitrarily and systematically omitted from the list of taxable property in said city "practically all stocks and bonds and other securities belonging to residents of said city of West Palm Beach and subject to taxation in said city during said period, to the value of at least $10,000,000. and cash in banks belonging to residents of said city and subject to taxation in said city during said period to the value of at least $10,000,000., and mortgages of record other than purchase money mortgages, owned by residents of said city and subject to taxation in said city during said year, to the value of at least $15,000,000." That the total assessed value of land in the city for that year was $59,684,515; of improvements upon real estate $11,294,380. and of personal property appearing on the roll $6,837,248. That the millage levied was 17.6 mills. That if the omitted property had been placed upon the assessment roll, the millage would have been materially reduced.

In City of Tampa v. Palmer, 89 Fla., 514, 105 So., 115, it was held that when considered with reference to taxation, money is transitory property, and its mere presence on deposit in banks does not necessarily render it sub-

ject to taxation there. But the allegation of the bill is that the cash in banks referred to belonged to residents of said city and was subject to taxation, and yet was intentionally omitted.

The demurrer attacks all of the above allegations as being vague, indefinite and uncertain. In support of this ground of demurrer, the defendants, cross-appellants here, contend that they should not be required to answer such a general allegation; that they do not believe it could be determined what amount of *cash* residents had on deposit in banks on January 1st, 1926. That as to stocks, bonds and other securities, the complainant does not attempt to say in any definite way the nature of these securities, to whom they belonged, nor where they were located, nor does complainant attempt to show who were the owners of the mortgages, their location, or anything definite concerning the same.

It must be admitted that these allegations are very general in their nature. While the rule is quite well established that, generally speaking, the pleader is only required to allege ultimate facts and is not expected to allege in his pleading the evidence which he must produce in order to prove such allegations of ultimate facts, which would render the pleading unduly prolix, yet there are some exceptions to this rule. Thus, where fraud is charged, the pleader must allege the essential facts constituting the fraud, with a sufficient degree of particularity for the court to be able to determine whether on the facts pleaded there is any real foundation, *prima facie* at least, for the charge of fraud. We are inclined to think that allegations of the above nature, come within the spirit of this exception. They attempt to charge a legal fraud upon the taxpayer. Where a tax payer delays for two or three years from the

assessment before raising any legal objection to the assessment made or tax levied on his property, and then assails the validity of the tax assessment roll as a whole on the ground that the assessor intentionally and systematically omitted a large amount of taxable intangible property from the roll, he should be required to go farther than a bald allegation in general terms that the assessor intentionally omitted a certain number of millions of dollars worth of this, that and the other classes of property which were subject to taxation. This is too vague. While he ought not to be made to plead his evidence, he should be required to allege some facts to support the general charge, or a sufficient number of specific instances of such intentional omissions as would show to the court, on the face of the bill, that there was some definite and substantial foundation for the broad general allegation, reasonably sufficient to warrant the court in requiring the defendant to answer. Hillsborough Grocery Co. v. Leman, 62 Fla. 208, 56 So., 684; Folsom v. Bank of Greenwood, 120 So. 317, 97 Fla. 426; City of Tampa v. Palmer, 105 So. 115, 89 Fla. 514. We might observe in this connection, that there is some question as to the duty of the tax assessor to assess "bonds". "All public stocks or shares in all incorporated or unincorporated companies" are by the statute classed as personal property and made subject to taxation. Section 696 Rev. Gen. Stats. of 1920; Sec. 896 Comp. Gen. Laws. The statute does not expressly name "bonds", though it does make taxable "all debts due or to become due from solvent debtors, whether on contract, notes, or otherwise." This we think is broad enough to cover bonds of solvent companies, which are written evidences of indebtedness, and are also in effect notes or contracts to pay money at a future date. The amendment to sec. 1, Art. IX, of the constitu-

tion, adopted in 1924, to the effect that the legislature could provide a special rate not exceeding five mills on intangible property, is not self-executing, and until the legislature exercises this permissive authority, the organic rule of uniformity and equality in the rate of taxation on all property, real and personal, including intangible property, remains in force. Porter v. First National Bank, 119 So., 130, 96 Fla., 740. It may be that the practical difficulty of discovering, locating and assessing the value of intangible property, and the ease with which it can be concealed, transferred, or removed from the jurisdiction of the particular taxing unit, constituted one of the reasons that prompted the adoption of the constitutional amendment referred to.

This court, in Roberts v. American National Bank, 115 So., 261, 94 Fla. 427, held that the statutes of the State of Florida require that all property, *real and personal*, in this State, and all personal property belonging to residents of the State, not exempted by statute, shall be subject to taxation; and when property subject to taxation, substantial in value, is deliberately or intentionally omitted from the assessment roll by an assessor with knowledge of its liability, a right of complaint is thereby given against the entire assessment to anyone whose burdens are unduly increased by such omission. See also City of Tampa v. Kaunitz, 39 Fla., 638, 23 So. 416; Camp Phosphate Co. v. Allen, 77 Fla., 341, 81 So., 503; Cooey v. Johnson, 95 Fla., 946, 117 So., 111; Folsom v. Bank of Greenwood, 97 Fla. 426, 120 So., 317.

But it is a general principle that one will not be heard to complain of action that was not injurious to him. Complainant must show that he has suffered or will suffer injury. 4 Cooley on Taxation, 4th Ed., Sec. 1655; Folsom

v. Bank of Greenwood, 97 Fla., 426, 120 So., 317. In the case just cited, it was said in the opinion of MR. JUSTICE WHITFIELD (omitting the numerous citations of cases):

"Where the statute under which ad valorem tax assessments are made is valid, complaining owners of assessed real estate may not be injured by the mere fact that all personal property is not assessed, for non constat the personal property of such complaining owners of real estate is not assessed; and owners of assessed personal property may not be injured by the mere fact that all personal property is not assessed, for non constat all of the complainant's personal property is not assessed; and mere omissions of some property do not render assessments invalid. The prima facie correctness of an assessment when made by the proper officers must be affirmatively overcome by appropriate and sufficient allegations and proofs excluding every reasonable hypothesis of a legal assessment."

"Where in judicial proceedings an illegal or unequal tax assessment is alleged as a basis for an injunction to remedy an asserted injury to property rights, the alleged illegal or unequal tax assessment is not established by a showing merely that all property subject to a duly authorized tax was not assessed, or that the assessed valuation placed upon the property of others is lower than the assessed valuation placed upon complainant's property, or that the assessed valuation placed upon some classes of property are relatively lower than the assessed valuation placed upon other classes of property that are subject to the tax. The omission to assess some property subject to the tax, or the unequal valuations in assessments as made, even if shown to be substantial in amount, might be a mere oversight or error of judgment of the assessing officers, which would not be sufficient to render illegal the assessment against the complainant's property

(see City of Tampa v. Palmer, 89 Fla., 514, 105 So. 115) : and the complainant might own property subject to the tax that was omitted or that is of the classes of property that are given the relatively lower valuation, or some of complainant's property might be assessed lower than that of others, in which cases the complainant might not be injured; and material injury must be shown to warrant judicial relief, for *de minimis lex non curat.*"

It would appeal from the above that the bill in this case should have clearly negatived the ownership by the complainant of any of the classes of property which it is alleged were intentionally and systematically omitted from taxation, or if only a negligible amount was owned, it should have set out what it was and the value thereof, so that it would appear whether or not the complainant was substantially injured by the omissions complained of. As regards this point, the bill alleges, "that your orator owns no other property whatever, either in the State of Florida or elsewhere other than the above described land, the 72 bedroom hotel and the furniture aforesaid." This allegation being in the present tense, must be construed as of the date the bill was filed, and the bill having been filed in September, 1929, it does not deny the ownership by complainant of stocks, bonds, mortgages, or other securities or cash in bank, on January 1st, 1926, or subsequent years, previous to the filing of the bill.

The second ground of attack alleged against the assessment roll for 1926 is that the City Tax Assessor, in preparing said roll, employed an illegal system of assessment or valuation of the property listed on the roll, towit, a system of valuing all land at one hundred per cent of what he considered full market value, and all buildings,

structures or improvements at fifty per cent of what he considered full value, thus omitting half the value of improvements and thereby discriminating against unimproved real estate and in favor of improved property, especially such improvements as the "sky scraper" office buildings in the city; that while complainant's property was improved to a certain extent, it was not improved with such costly structures as some other property, and that thereby complainant had suffered a loss and was taxed higher than the owners of real estate who had constructed more costly buildings thereon. The bill does not allege that complainant's building was taxed higher in proportion to its value than were the buildings of other tax payers. It appears elsewhere in the bill that complainant's property was assessed for 1926 as follows: The land at $13,000.00, and the improvements thereon, $50,000.00. Admitting that the system of assessing land at its full value and improvements thereon at half their value was illegal both under the general statute (section 895 C. G L.) and the city's charter act, the bill does not clearly show that complainant was injured by this *method* of assessment. While the bill alleges that the real cash market value of complainant's land in 1926 was not more than $7,000.00, it alleges that the cash value of the hotel building located thereon for that year was $81,000.00. Even on this basis of values this method of assessment worked to the advantage of complainant for 1926 to the extent of reducing the assessment on its hotel building from $81,000.00 to $50,000.00, which was $31,000.00 less than its actual cash value; and inasmuch as the statute contemplates that the building was part and parcel of the real estate for purposes of taxation, this reduction in

the valuation of the building more than made up for the $6,000.00 alleged over-valuation of the land. The complainant, as the owner of improved property, on which the improvements were worth several fold the value of the land on which they stood, could not have been injured by a method of assessment which reduced the assessed valuation of such improvements; nor would it appear that such a method denied him the equal protection of the law, or of its administration even though some owners had erected more costly improvements. Nor does it appear that such *method* of assessment affected complainant otherwise or differently than other taxpayers similarly situated, in proportion to the value of their improvements, or placed upon it any other or greater proportionate burden than upon others. City of Tampa v. Palmer, 89 Fla., 105 So., 115; Folson v. Bank of Greenwood, *supra*. In Camp Phosphate Co. v. Allen, 77 Fla., 341, 81 So., 503, it was held that the purpose of the statute in requiring property to be assessed at its full cash value was to secure uniformity and equality of burden upon all property in the State as contemplated by the constitution, and that where all taxable property has been assessed on a basis of fifty per cent of its true cash value, the purpose of the constitutional provision has not been defeated, and such infraction affords no ground for a court of equity to declare the assessment void.

In respect to the points above discussed, the bill was in part, as intimated, vulnerable to the demurrer questioning its sufficiency.

The allegations of the amended bill as to the assessments and assessment roll for the year 1927 are in principle substantially the same in respect to the matters above discussed as those for the year 1926.

We come now to the third line of attack—that based on excessive over-valuation of complainant's property. The amended bill alleges that as to each of the years from 1926 to 1929 the assessments of complainant's land and of its furniture were far in excess of their full cash value, contrary to both the general statute and the city charter, and that for the year 1928 the assessment on complainant's land was $16,000.00, on its improvements $96,000.00, and on the furniture $12,000.00, whereas the actual cash value of the land that year was not more than $4,000.00, of the improvements (by reason of depreciation) not over $43,600.00, and of the furniture not more that $4000.00. That for the year 1928 the property of the West Palm Beach Water Company was assessed at a valuation of $1,606,660.00 whereas the city had claimed in a suit during said year that it was worth $3,498,414.73, of which the city assessor had knowledge and that such assessor thus wilfully and knowingly omitted merely two million dollars from the assessment roll for the year 1928. That for the year 1929, complainant's land was assessed at a valuation of $16,000.00, its improvements at $90,000.00, and its furniture at $12,000.00, which valuations were greatly in excess of the actual cash value alleged. That during each of said years 1928 and 1929 the city assessor at no time visited or inspected complainant's property, although unacquainted with its value, and made no effort to ascertain and determine the actual cash value of its said land, improvements and furniture, and that the value placed thereon by him was arbitrary and not based on any evidence which could enable him to form a fair and just estimate of its value.

We consider that these allegations of overvaluation of complainant's property, above the full actual cash value,

do not affect the validity of the assessment roll as a whole, but only go to the validity of the excessive assessments against the particular property. The bill does not expressly allege that the assessor did not place similar excessive valuations on other similar property. But it will be presumed, in the absence of express allegations to the contrary, that the tax assessor complied with the law and hence did not assess other property at a valuation in excess of its cash value, Therefore, when as expressly alleged, the assessor arbitrarily assessed the property of complainant in an amount flagrantly in excess of its cash value, the effect is to allege that he committed an unlawful act, and one that apparently worked a discrimination against complainant to the extent of such alleged excess. The principle of law involved is similar to that enunciated in Camp Phosphate Co. v. Allen, *Supra,* where it was held that "Where there is an intentional, arbitrary and systematic undervaluation by tax officials of some of the taxable property in the same class with other property, it contravenes the constitutional rights of one whose property is intentionally and arbitarily overvalued." See also City of Bradenton v. Seaboard Air Line Ry. Co. 130 So., 21. It will have been noted that the bill does not expressly allege that the overvaluation was intentional, though it does allege that the valuation was arbitrarily fixed by the tax assessor without viewing the property and without any evidence upon which he could arrive at a fair and just estimate of its value. In City of Tampa v. Palmer, *supra,* it was held that mere inadvertence, or a bona fide mistake of judgment in fixing a valuation for taxation does not in itself amount in law to a fraud, and that relief will not be granted by courts of equity solely upon the ground

that the valuation is excessive "unless such valuation is so obviously and flagrantly excessive as to amount in law to a fraud and clearly imputes to the tax assessor an intention to arbitrarily discriminate against the complaining tax payer." Tested by the rule thus laid down, we cannot say that the allegations of the bill as to the overvaluation of complainant's property for the years 1928 and 1929 are insufficient. These allegations show that the assessments were for amounts about twice the amounts of the actual cash values. These allegations do not go to the validity of the assessments for 1926, on which the tax sale was based, upon which the defendant Foster Company was applying for a tax deed in 1929, the issuance of which is sought to be enjoined, but they do affect the validity of the assessments for the years 1928 and 1929 on complainant's property, which it is alleged had also been sold for the taxes for the years 1927 and 1928, the sales certificates having passed into the hands of the same defendant, the Foster Company, and of which certificates the bill prays a cancellation.

Under these allegations of overvaluation, was the complainant required to first seek adjustment before the administrative body provided for the equalization of valuations and assessments before coming into a court of equity? We hardly think so. See Graham v. City of West Tampa, 71 Fla., 605, 71 So., 926, and City of Tampa v. Palmer, *supra*. In the able opinion of MR. JUSTICE STRUM in the last cited case, it was pointed out that if the overvaluation was the result of mere inadvertence or bona fide mistake of judgment, the remedy of the taxpayer is to go before the administrative body provided for the equalization of tax assessments, unless the valuation is so flagrantly and obviously excessive as,

within itself, to amount to a fraud, and clearly imputes to the tax assessor an intention to arbitrarily discriminate against the complaining taxpayer. In reviewing and distinguishing the cited case of Graham v. City of West Tampa, the opinion of Mr. JUSTICE STRUM in the Palmer case in 105 So., 115, 89 Fla. 514, has this to say:

"In the Graham case, the complaining taxpayer's bill alleged that the tax assessor 'assessed complainant's land at a value entirely arbitrary, unjust and excessive, said value being arrived at or determined in an arbitrary and illegal manner; that said assessor at no time visited or inspected said lands, though unacquainted with their value, and though often requested so to do by complainant; and complainant on information and belief charges that said assessor made no effort to ascertain and determine the value of said lands; and that the value actually placed thereon by said assessor, to-wit, $4,150.00, was by him fixed arbitrarily and not upon any evidence which might or could enable him to form a fair and just estimate of its value for assessment. That said assessed value is more than double the actual cash, fair or just value of said lands, * * * *,'

The court held that the allegations of this bill of complainant 'as to the *manner* in which the valuation of complainant's property was ascertained,' show manifest injustice and illegality, which require a response from the city." A careful inspection of the above quoted allegations of the bill will show not only a claim of excessive valuation, but of an excessive valuation arbitrarily and *intentionally* made, without knowledge of the actual value of the lands, and without effort to ascertain and determine the value thereof, which alleged conduct of the assessor would be

such an abuse of the discretion vested in him as would amount to a fraud upon the rights of the taxpayer, and 'a flagrant violation of or omission to follow the mandatory requirements of the law in valuing property for taxation,' a situation clearly distinguished from a mere mistaken exercise of judgment or discretion. Hence equity will take jurisdiction of such a case, not for the purpose of controlling the discretion of the assessor, but to remedy the fraud thus perpetrated by the abuse of that discretion."

We hold therefore that these allegations of excessive overvaluations were sufficient to give some equity to the bill, even in the absence of any allegation that complainant had first appealed to the board of equalization before seeking relief in a court of equity. Nor do we consider that sections one and sixteen of chapter 14572, Laws of Florida of 1929, properly construed and constitutionally applied, deny such relief. We think these statutory provisions may be given a field of operation without conflicting with sections 1, 3 and 5 of Art. IX, section 11 of Art. V, and section 4 of the Declaration of Rights, of our State constitution.

One of the grounds of demurrer is that complainant does not come into equity with clean hands, in that it does not tender into court or offer to pay its just and lawful proportionate share of taxes for said year, which, when construed in connection with the preceding grounds evidently refers to the year 1926. We will consider this ground of demurrer in connection with appellant's assignment of error addressed to that part of the court's order requiring complainant to pay 75% of the taxes for each of the years 1926 to 1929 inclusive as a condition precedent to the overruling of the demur-

rer and the denial of the motion to vacate the injunction and to dismiss the bill.

It must be admitted that the courts have no power to assess or levy taxes. This is a legislative, or in some of its features, an administrative power. Wade v. Murrher, 75 Fla., 494, 78 So., 536. See also in this connection, City of Orlando v. Giles, 45 Fla., 507, 33 So., 986, where it was held that the provisions of section 8, Art. IX, constitution, has no application to proceedings to set aside as clouds on title tax certificates or deeds made in pursuance of sales for non-payment of taxes. Since the above cases were decided, the legislature has adopted Chapter 8586, Acts of 1921, section one of which now appears as section 1038 Comp. Gen. Laws, and which reads as follows:

"The courts of chancery in this State shall have jurisdiction in all cases involving the legality of any tax, assessment or toll, and shall inquire into and determine the legality, equality and validity of the same under the Constitution and laws of the State of Florida, and shall render decrees setting aside such tax, assessment or toll, or any part of the same, that shall appear to be contrary to law; Provided, that the complainant shall in every case tender into court and file with the bill of complaint the full amount of any such tax, assessment or toll which he shall admit to be legal and due by him, or file with the bill of complaint, a receipt showing payment of the same prior to the institution of the suit."

While the courts cannot assess or levy taxes, they can, under this statute, strike down the illegal portion of a tax, and leave the remainder intact. There is nothing revolutionary or unconstitutional in this. The courts can hold one part of a legislative act unconstitutional

and leave the remaining portion intact, where the portion stricken down is severable, and a workable act within the legislative intent can be preserved. And as to State and county taxes, no suit to enjoin a tax sale or to cancel any tax certificate can be maintained unless the owner shall have paid to the tax collector of the county where the property is assessable the full amount of the taxes which could have been lawfully assessed against the property" for the period involved. Section 1008 C. G. L. These statutes appear to be substantially in line with the practice of courts of equity, even in the absence of statutes. But there is an exception more or less generally recognized, that where the entire tax must fall, on account of an illegal assessment, or if the tax or assessment be wholly void, complainant need not pay or tender anything. See Cooley on Taxation 4th ed., Sec. 1663; Norwood v. Baker, 172 U. S. 269, 43 Law ed., 443, 19 S. C. 187. Thus, it was said by this court, speaking through Mr. JUSTICE WHITFIELD, in the case of Roberts v. American National Bank, 97 Fla., 411, 121 So., 554.

"The law does not contemplate that the courts shall attempt to ascertain the amount of taxes that would be legally payable by a complainant if all of the property liable to taxation had been properly assessed, where it appears that much property subject to the assessment was not assessed, since it is not practicable, if possible, to ascertain with any degree of certainty what the amount of complainant's tax would be had all property been properly assessed particularly when the complaint is that large quantities of property subject to assessment were not assessed at all. The remedy in such a case is a duly authorized and proper assessment of all property liable to be assessed."

In the case just quoted from, there was also, in substance, a lack of authority to assess and levy the tax. A state cannot tax shares of National banks except by consent of congress, and this consent, as given by statute, is qualified and conditional, and unless the conditions fixed by congress are complied with, the authority to assess and levy such a tax is never vested, and the entire assessment and levy is void.

On the other hand, this court held in Dewhurst·v. City of St. Augustine, 91 Fla., 107 So., 689, that where a court of equity is asked to cancel city tax sales certificates, upon the ground of alleged illegality in the assessments upon which the certificates were predicated, when the taxes legally assessable against the property have not been paid, and the complainant does not offer to pay legal taxes or to do equity, the cause will be remanded for appropriate proceedings, with directions to permit the parties by stipulation or other proper-procedure to determine the amount of taxes which could have been legally assessed, and that upon proof of payment of such taxes the certificates shall be ordered cancelled, otherwise the bill shall be dismissed. See also City of Bradenton v. Seaboard Air Line Ry. Co., 130 So. 21. And in Louisville & N. R. Co. v. Amos, 123 So., 745, 98 Fla., 350, where a bill was filed to enjoin the collection of taxes based on an overvaluation and excessive assessment of complainant's property as compared with property of the same class, an order of the court below, which required the complainants to pay into court a certain percentage of taxes, found by the court to have been the amount for which the property could have been legally assessed, as a condition precedent to the effectiveness of the injunction granted, was upheld.

As that portion of the bill which contains equity only concerns the matter of excessive valuations for certain years, we think that in the light of these authorities the chancellor would have been authorized to require the complainant to pay into the registry of the court a sum sufficient to cover the amount of assessments which the allegations of the bill show could have been legally assessed against complainant's property for those particular·years, but the order as made applied to the taxes for all the years from 1926 to 1929 inclusive, and also appears to have required a larger sum to be paid for the years 1928 and 1929 than the allegations of the bill justified; and the order was therefore erroneous.

As to the allegations of the bill attacking the validity of the entire assessment rolls for the years 1926 and 1927, on the ground that the tax assessor had arbitrarily, intentionally and systematically omitted certain ·classes of personal property, of the total value of $35,-·000,000.00, from the said assessment rolls, if such allegations had been sufficiently well pleaded, it would hardly have been possible for the court to have ascertained what ·complainant's assessment would or should have been if the property alleged to have been thus omitted had .been assessed for taxation, and under the principles enunciated in the cited case of Roberts v. American National Bank, the court would not have been authorized to have required the complainant to pay any sum to cover the taxes for said years.

We have considered the ground of demurrer which ·sets up that the bill shows laches and estoppel because the averments of the bill fail to show that the complainant raised any objection to the legality of the assessment, or of the tax sale, for taxes for 1926, until the defendant

applied for a tax deed in 1929, but as we have held that the allegations of the bill attacking the validity of the assessment for that year are insufficient, it is not necessary to pass upon the merits of this ground of demurrer. But we are inclined to the view that a tax payer may question the validity of an assessment and levy of this nature at any time prior to the issuance of tax deed, in the absence of statutory provisions to the contrary, or special circumstances which would create an estoppel under general equitable principles relating to the subject.

Upon the showing as made by the amended bill, the court would have been warranted in vacating the injunction against the issuance of the tax deed, subject perhaps to reinstatement if the complainant, upon opportunity given, had promptly amended his bill so as to clearly show the illegality of the assessment for the year 1926, upon which the tax sale certificate on which issuance of the tax deed applied for, was based.

For the errors pointed out, the cause will be reversed and remanded for further appropriate proceedings consistent with the views hereinabove expressed.

Reversed and remanded.

BUFORD, C.J., AND ELLIS, J., concur.

WHITFIELD, P.J., AND TERRELL, J., AND HUTCHINSON, Circuit Judge, concur in the opinion and judgment.

DAVIS, J., disqualified.