L. H. COOMBES, as Successor Trustee, and Lands upon which said Trustee has a lien, *et al.,* v. CITY OF CORAL GABLES.

168 So. 524.
Division B.
Opinion Filed May 27, 1936.

*Shutts & Bowen, Benjamin E. Carey, Joseph F. Mc-Pherson* and *Frederick W. Schmitz,* for Appellants;

*Morton B. Adams* and *Middleton McDonald,* for Appellee.

TERRELL, J.—The Legislature of 1931 enacted Chapter 15038, Laws of Florida, granting to municipalities a supplemental, additional, optional, and alternative method of enforcing tax liens and special assessments, that is to say by suit in chancery, the practice, pleadings, and procedure therein being in substantial accord with that required for the foreclosure of mortgages on real estate.

Pursuant to said act by the appellee, City of Coral Gables, filed its bill of complaint in the Circuit Court of Dade County to foreclose approximately 36,000 tax liens, held by it and evidenced by tax sale certificates for the years 1928, 1929, and 1930, on about 12,000 vacant city lots. Some of the owner defendants filed special appearances and moved to quash the service on the ground that the Act was unconstitutional in that it provided for a proceeding *in rem.* Other owners filed motions to dismiss in which they challenged the validity of the Act and compliance with the procedure prescribed by it.

The chancellor held that the provisions of the Act were substantially complied with, that the special appearances were in effect general appearances and brought the parties into court, but that the provisions of the Act did not constitute due process, that it was accordingly unconstitutional, and dismised the bill. On appeal this Court reversed that part of the judgment holding the Act unconstitutional and dismissing the bill but affirmed it in all other respects. City of Coral Gables v. Certain Lands, 110 Fla. 189, 149 So. 36.

Defendants then filed their answers in which they contend that the assessments on which the certificates being foreclosed are based are unconstitutional and void because of an intentional, deliberate, systematic, and grossly excessive valuation of the lots, gross undervaluation of improved property, total omission to assess vast amounts of personal property, although in existence, discrimination in assessment between improved and vacant property, and between real estate and personal property, all of which is alleged to have been done intentionally and systematically for an illegal purpose resulting in material injury to appellants, denying to them due process and equal protection of the law. A motion to strike portions of the answer was denied, a master was appointed, testimony was taken, and the findings of the master in so far as pertinent to the issue in this case are as follows:

"1. That prior to the year 1928, all improvements in the nature of buildings and structures were omitted from the tax roll of the City of Coral Gables, as a matter of policy in order to encourage building; that prior to the year 1928, the only assessments made by the City of Coral Gables were upon the land included within the territory of that municipality, and no assessments prior to that time were made upon any buildings, or improvements; that commencing with the year 1928, an assessment was made upon the improvements upon the land embraced in the City of Coral Gables, which assessment was based upon a figure of ten per cent. of the appraised value of said improved property.

"2. That in 1929 and 1930, the assessments of improvements upon land embraced in the City of Coral Gables were increased to twenty per cent. of the appraised value of such buildings and improvements.

"3. That the assessed values placed upon the land embraced within the corporate limits of said municipality, during the years 1928, 1929, and 1930, were based upon so-called 'boom time valuations,' and were for each of said years, and particularly for the year 1928, grossly excessive.

"4. That there was no assessment of personal property by the City of Coral Gables for the years 1928, 1929, and 1930."

From these findings of fact the master's findings of law may be summarized as follows: That all lands described in this litigation were subject to municipal taxes by appellee for the years 1928, 1929, and 1930, that such liability does not depend on a proper assessment, that appellee has a valid enforceable lien against 'said property for unpaid taxes, that the general laws of the state governing the subject of taxation apply and govern the levy, assessment, and collection of taxes in the City of Coral Gables, and that the amount due the city for the years 1928, 1929, and 1930 may be ascertained by multiplying the millage for each of said years by the valuation found under Section 997, Compiled General Laws of 1927, which is the last assessed valuation, if less than the regular valuation. The master also found as a matter of law that the valuations on the 1933 assessment roll were the last lowest assessed valuations of said lands, that all amounts imposed for the years 1928, 1929, and 1930, in excess of the 1933 assessment roll were excessive and illegal and may be stricken by the court leaving the remainder on which judgment might be entered, that defendants are estopped to challenge the assessments because of failure to assert their rights within the period allowed for voluntary payment of taxes, that the city having offered in the record to make an allowance to defendants in the amount of taxes due on account of the

omission to assess personal property for the years the certificates are being foreclosed based upon the values placed upon such personal property by the state and county tax assessor it may now be permitted to do so and be found that an allowance of five per cent. for such omission would be the maximum to which the defendants could possibly be entitled under the evidence.

Some of the defendants filed exceptions to the master's report. These were overruled and on final hearing his report was in all respects affirmed and final decree entered accordingly. This appeal is from the final decree.

Eight questions are posited and argued by appellants but all turn on the fact of whether or not the tax liens of the city as evidenced by the tax certificates being foreclosed are void and unenforceable because of the excessive and discriminatory valuations charged.

Appellants contend that the liens and certificates are void *ab initio* and cannot be enforced because based on assessments grossly excessive, and discriminatory as between realty and personalty and as between improved and unimproved property. To support their contention they rely on: West Virginia Hotel Corp. v. Foster Co., 101 Fla. 1147, 132 So. 842; Roberts v. American Nat. Bank of Pensacola, 94 Fla. 427, 115 So. 261; 97 Fla. 411, 121 So. 554; Graham v. City of West Tampa, 71 Fla. 605, 71 So. 926; Folsom v. Bank of Greenwood, 97 Fla. 426, 120 So. 317; City of Tampa v. Kaunitz, 39 Fla. 683, 23 So. 416; City of Tampa v. Colgan, 111 Fla. 538, 149 So. 587; Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 So. 503.

Appellee, on the contrary, contends that the liens and certificates may be enforced for the amount of taxes actually due for the years 1928, 1929, and 1930, that the lots were subject to taxation for said years, that the tax levy

made by the city for each of said years was authorized and valid, that no part of the taxes so levied was paid prior to suit, and that the period for voluntary payment of the taxes for 1928 expired prior to institution of suit, that defendants have not offered to pay any portion of the tax assessed against them, and that they have been awarded the benefit of Section 997, Compiled General Laws of 1927, authorizing redemption at a less amount than was assessed and levied. To support its contention appellee relies on: Aull v. Lidepa Corp., 118 Fla. 408, 159 So. 808; Hackney v. McKenny, 113 Fla. 176, 151 So. 524; Tax Securities Corp. v. Manatee Corp., 115 Fla. 655, 155 So. 742; Ranger Realty Co. v. Hefty, 112 Fla. 654, 152 So. 439; DeVane v. Leatherman, 113 Fla. 216, 151 So. 530; City of Sebring v. Wolf, 105 Fla. 516, 141 So. 736; Abell v. Town of Boynton, 95 Fla. 984, 117 So. 507.

The cases relied on by appellee support the general rule that where relief in equity is sought from payment of alleged invalid assessments of authorized ad valorem taxes as distinguished from a tax assessment that is void because not authorized by law, the complainant is required as a condition precedent to do equity by paying all taxes that legally could have been and were levied though not properly assessed against the property by the taxing unit, whose assessment is challenged as being invalid.

The cases relied on by appellants support the general rule that if taxing officers intentionally commit an illegal act with a fraudulent purpose in the matter of making assessments, as where taxable property is intentionally omitted from the roll for an improper purpose or where property is purposely overvalued or taxpayers are purposely discriminated against the entire assessment is illegal and void but if the omission to assess taxable property arises in consequence

of a *bona fide* belief on the part of the taxing officers that the omitted property is exempt from taxation or results from inadvertence or negligence, without any intent on their part to impose additional or unequal burdens upon other taxpayers, the assessment will not be held to be void.

Appellee contends that the rule supported by the cases relied on by it should be applied in this case because ad valorem taxes are required to be assessed as of January 1, that a lien is created for unpaid taxes as of that date, that appellants have not offered to do equity by paying the amount of taxes actually due, that under the law (Section 1038 Compiled General Laws of 1927) no tax certificate shall be held invalid except upon proof that the property was not subject to taxation or that the taxes had been paid previous to tax sale or prior to the institution of suit, and that the assessments were excessive and discriminatory the court has the power to strike the excessive portion and enter his decree for the correct amounts due which was done in this case.

If the assessing officers for appellee had made a *bona fide* or even a colorable attempt to comply with the law in making the assessments complained of there might be merit to this contention but so far as the record shows there was no effort to make a valid assessment. Not only was there no attempt to comply with the law but the very basis and theory on which the assessments were made were devoid of equality or any actual relation to the value of the property. The law requires that valuations of property for taxation must have some relation to the actual value of the property and that there must be no substantal inequalities in them. If the required procedure is not substantially followed and the valuations are found to be unjust relatively or abstractly the assessments will be held invalid.

The assessments sought to be avoided were made without any view to the constitutional requirement of uniformity and equality. The primary objective of the assessing officers appears to have been the encouragement of a real estate development. The record discloses that prior to 1928 no taxes were imposed on any improvements placed on the lots against which the assessments complained of were made, that in 1928 improvements on said lots were assessed at ten per cent. of their appraised value, and for 1929 and 1930 they were assessed at twenty per cent. of their appraised value. The assessments imposed on the lands were grossly excessive and no assessment whatever was imposed on personal property.

Such a method of assessment resulted in the grossest inequalities, and as shown by the evidence, wide discrimination between owners of improved and unimproved property and between owners of improved realty and personal property. The inequalities and discriminations shown to have been created are so at variance as to make it impracticable to resolve them and for this reason we have reached the conclusion that they must abrogate and nullify the entire assessment.

We do not imply that there are not instances in which the chancellor may interpose his judgment and separate the valid from the invalid portion of the tax and give judgment for the former as a condition of relief but there must be some colorable or *bona fide* attempt at compliance with the assessment laws as a predicate for action. He cannot be converted into an assessment officer and be clothed with all the duties of such as would be required in this case.

Tax assessing officers are under bond and duty to the tax-paying public to make an honest attempt at compliance with the law and the taxpayer has a right to assume that

such duty will be faithfully executed. To approve the assessment made in this case would leave the assessing officer to impose any kind of burden on the taxpayer he saw fit or to depart from every requirement of the law in making assessments, leaving the taxpayer with no recourse but a suit to adjudicate his right. The assessing officer has a wide discretion in making assessments but the breadth of his discretion serves to accentuate the seriousness of the duty imposed on him and it should under no circumstances be made an instrument to inequitably distribute the burden of taxation.

In cases where the assessment is voidable the taxpayer may waive his right or may be estopped to contest the validity of a tax lien but this rule is not applicable when the lien is utterly void. In either event the one who assails the validity of the lien takes the burden of showing its invalidity but that burden has been successfully carried in this case.

We do not overlook the fact that the chancellor used the 1933 tax roll as a basis for his judgment but there are various reasons why that was error. It is not shown that it was not afflicted with the same infirmity that the rolls in question were and since we hold the latter to be void *ab initio* there was no basis on which they could be corrected by the 1933 roll.

In this disposition we have not overlooked the liberal power vested in the chancellor by Chapter 15038 under which suit was brought and Section Twenty-Two of Chapter 14572, Acts of 1929 and other provisions of the taxing laws but we cannot believe that any of these acts were intended to authorize him to substitute his judgment for and cure all the delinquencies of an assessing officer. If the assessing officer makes a *bona fide* attempt at a correct

assessment and fails on proper showing made the chancellor may correct it but he cannot breathe life into a nullity.

The liens complained of are still held by appellee who admits that they are predicated on assessments which were excessive, discriminatory, and placed an unequal burden on all unimproved property. For this reason and the further fact that they were made on a wrong theory they are void and the chancellor is not under the law in this record authorized to enter judgment for the proper amount of taxes due.

Other assignments have been examined but it becomes unnecessary to discuss them. It follows that the decree below must be and is hereby reversed.

Reversed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J., concur in the opinion and judgment.

DAVIS, J (concurring).—I agree to the opinion and conclusion in the light of the fact that here rights of third parties have not intervened. The position of appellants is that of *defending* against the taxing officers whose fault has caused the situation complained of. The case made discloses something more than mere over-valuation of appellants' property—it shows an almost complete disregard of the tax laws under which the city exercised a *delegated* power of taxation.

BUFORD, J., concurs.