MOURNING JONES v. THE CITY OF ARCADIA, á Municipal Corporation

3 So. (2nd) 338
En Banc
Opinion Filed June 27, 1941
Rehearing Denied August 2, 1941

572

*H. G. Jones,* for Appellant.

*Leitner & Leitner,* for Appellee.

BUFORD, J.—Two suits were filed by the City of Arcadia in the circuit court in and for DeSoto County, Florida, one against Mourning Jones and C. O. Johnson and the other against Mourning Jones and C. A. Lindsey Bronson, to foreclose certain tax certificates evidencing liens for unpaid municipal ad valorem taxes for the years 1926 and 1936 inclusive. The suits were consolidated. On final hearing decree was entered in favor of plaintiff.

The defendants interposed motions to dismiss and the defendant Jones interposed counterclaim. Motion to dismiss was denied. Counterclaim was stricken. Motions were amended and again stricken. Answers and counterclaims were filed. Portions of the answers were stricken and the amended counterclaim was stricken. Portions of the answer stricken constituted no defense to the cause of action. The counterclaim was untenable.

The bill of complaint was not without equity. It alleged sufficient facts to show the plaintiff entitled to the relief prayed under the public statutes, the contents of which the court was bound to take judicial cognizance.

The record shows that the City of Arcadia had the power granted by the Legislature to levy taxes for municipal purposes. That the City of Arcadia proceeded to levy taxes for the several years referred to, *supra,* and that the taxes were not paid for either of such years. There were irregularities in the assessments and it may be conceded that these irregularities if not duly cured by appropriate proceedings, were sufficient to constitute a lack of due process of law. However, all irregularities not amounting to a denial of due process of law were cured by the provisions of Chapter 16309, Special Acts of 1933, and by Chapter 19683, Special Acts of 1939, which were enacted for that purpose.

The proceedings with due notice and opportunity to be heard upon the merits of the tax claims afforded due process of law in enforcing the tax liens pursuant to the statutes, Chapter 6323, Acts of 1911.

The court below and this Court is bound to take judicial cognizance of such Acts of the Legislature. See Charlotte Harbor & Northern Ry. Co. v. Welles, *et al.,* 78 Fla. 227, 82 Sou. 770; Howarth v. City of DeLand, 117 Fla. 692, 158 Sou. 294; A. C. L. Ry. v. Holliday, 73 Fla. 269, 74 Sou. 479; Amos v. Mosely, 74 Fla. 555, 77 Sou. 619; Cranor v. Board of County Commissioners of Volusia County, 54 Fla. 526, 45 Sou. 455. And it is not necessary that those Acts be pleaded, but it is sufficient that the pleading of the party who seeks to rely upon the statute shall set

forth the facts which bring the case within it. See Dade County v. Miami, 77 Fla. 786, 82 Sou. 354; A. C. L. Ry. Co. v. State, 73 Fla. 609, 74 Sou. 595. The lack, if any, of due process of law in connection with the assessment of the tax is overcome by the provisions of the Chapter Act, cited *infra,* requiring the enforcement of the tax to be by proceedings in chancery with notice duly served on the property owner. See Redman v. Kyle, *et al.,* 76 Fla. 79, 80 Sou. 300, and Anderson v. City of Ocala, 67 Fla. 204, 64 Sou. 775, in which we said:

"If the proceedings to enforce the assessment is in the nature of a judicial proceeding in which notice is given to the property owner and a full opportunity is given him to be heard upon the merits, such proceeding constitutes due process of law and no prior notice seems to be necessary."

The record in this case shows that the defendants were duly served in the tax lien foreclosure suits and that they were given opportunity to be heard on all questions controlling the determination of the issues properly presented. While the record shows that some of the assessments were based upon an inflated valuation there is no showing of discrimination as between those property owners and others like situated, and it also shows that the municipality voluntarily agreed to accept less than the amount of the tax as shown by the assessment roll.

The final decree adjudicated the amount due for taxes and attorney's fees under the provisions of the statute, Chapter 6323, Acts of 1911, authorizing the tax liens of the City of Arcadia to be enforced by suits in chancery.

On the entire record no reversible error is made to appear and, therefore, the decree is affirmed.

So ordered. .

BROWN, C. J., WHITFIELD, TERRELL and ADAMS, J. J., concur.

THOMAS, J., agrees to conclusion.

CHAPMAN, J., dissents.

CHAPMAN, J. (dissenting).—The final decree assigned as error here decreed the payment by the appellant, Mourning Jones, of the sum of $5,309.26, as the amount due for taxes and attorney's fees due to the City of Arcadia as delinquent taxes for the years 1926 to 1936, inclusive, on the South 20 feet of Lot 3 and Lots 4 and 5 and Lots 6 to 13 of Block 1 of the original survey of the City of Arcadia. After suit was filed, the city council reduced the valuation of the assessments on the property described in the final decree, with other property, and waived the payment of interest. While the two tax certificate foreclosure suits embracing land other than described in the final decree were by agreement of counsel and order of court dismissed prior to the entry of the final decree.

The testimony shows the reduced valuations made by the city council of Arcadia after the institution of suit were viz.:

| Year | Description | Blk. | Valuation as Reduced | Taxes |
|------|-------------|------|----------------------|-------|
| 1926 | Lots 1, 2, 3, 4, 5, 5a, 5b | 1 | $25,000.00 | $650.00 |
| 1926 | Lots 6 to 13 both inc. | 1 | 22,000.00 | 572.00 |
| 1927 | Lots 1, 2, 3, 4, 5, 5a, 5b | 1 | 25,000.00 | 500.00 |
| 1927 | Lots 6 to 13 both inc. | 1 | 22,000.00 | 440.00 |
| 1928 | Lots 1, 2, 3, 4, 5, 5a, 5b | 1 | 25,000.00 | 500.00 |
| 1928 | Lots 6 to 13 both inc. | 1 | 21,000.00 | 420.00 |
| 1929 | Lots 1, 2, 3, 4, 5, 5a, 5b | 1 | 20,000.00 | 400.00 |

| Year | Description | Blk. | Valuation as Reduced | Taxes |
|------|-------------|------|----------|-------|
| 1929 | Lots 6 to 13 both inc. | 1 | 21,000.00 | 420.00 |
| 1930 | Lots 1, 2, 3, 4, 5, 5a, 5b | 1 | 13,333.00 | 266.65 |
| 1930 | Lots 6 to 13 both inc. | 1 | 14,000.00 | 280.00 |
| 1931 | Lots 1, 2, 3, 4, 5, 5a, 5b | 1 | 13,333.00 | 266.60 |
| 1931 | Lots 6 to 13 both inc. | 1 | 14,000.00 | 280.00 |
| 1932 | Lots 1, 2, 3, 4, 5, 5a, 5b | 1 | 10,666.00 | 213.32 |
| 1932 | Lots 6 to 13, both inc. | 1 | 11,000.00 | 220.00 |
| 1933 | Lots 1, 2, 3, 4, 5, 5a, 5b | 1 | 9,333.00 | 196.66 |
| 1933 | Lots 6 to 13 both inc. | 1 | 10,500.00 | 210.00 |
| 1934 | Lots 1, 2, 3, 4, 5, 5a, 5b | 1 | 8,000.00 | 160.00 |
| 1934 | Lots 6 to 13 both inc. | 1 | 9,000.00 | 180.00 |
| 1935 | Lots 1, 2, 3, 4, 5, 5a, 5b | 1 | 8,000.00 | 220.00 |
| 1935 | Lots 6 to 13 both inc. | 1 | 9,000.00 | 247.50 |
| 1936 | Lots 1, 2, 3, 4, 5, 5a, 5b | 1 | 8,000.00 | 192.00 |
| 1936 | Lots 6 to 13 both inc. | 1 | 13,000.00 | 312.00 |

The authority to sustain the city council in reducing the valuations does not appear in the briefs.

It may be safe to assume that the city council of Arcadia acted similarly to the Supreme Court of Florida when it stated that it would take judicial notice of the 1925 "land boom," its disastrous collapse and the extreme deflation in Florida's real estate; that the boom prevailed in Florida during 1925 and burst in 1926. See City of Coral Gables v. State, 128 Fla. 874; 176 So. 40; Grymish v. Krim, 126 Fla. 191, 170 So. 717; Smith v. Massachusetts Mut. Life Ins. Co., 116 Fla. 390, 156 So. 498, 95 A. L. R. 508.

Regardless of the legal authority of the city council to reduce the valuations for the years 1926 to 1936, inclusive, there is some evidence to support the conclusion that it was inequitable and unjust to maintain a suit to foreclose its tax certificates on wild and inflated assessments made during the boom period

and subsequent years. There is likewise in the record no evidence to acquaint this Court with the net income on the property described in the final decree for the years 1926 to 1936. The defendant failed to pay taxes during these years and the high assessments may have been a justification from a financial point of view, but the courts could have reviewed these high assessments and entered such decree as the facts and the law would justify. See City of West Palm Beach v. Eppelman, 132 Fla. 686, 181 Sou. 894.

On February 5, 1940, appellant filed an answer and counter claim in which it was denied that the tax rolls of the City of Arcadia as applicable to the defendant's property were lawfully assessed for the years 1926 to 1936, inclusive. The assessment rolls for the years 1926 and 1927 were not prepared or made by the tax collector of the City of Arcadia, but by a committee of citizens thereof appointed by the city council and instructed to prepare the rolls. The rolls as prepared by the citizen's committee raised the assessment roll containing all the property of the City of Arcadia to approximately ten million dollars, but at a subsequent year the city council reduced it thirty per cent due to the collapse of the Florida land boom. That the annual assessment rolls thereof since 1926 and 1927 to 1935, inclusive, were on valuations that were fictitious, confiscatory and unconscionable and were made in violation of Section 1 of Article IX of the Florida Constitution. The assessment rolls for the years 1926 to 1932 were never revised, corrected or equalized by the city council of Arcadia. That the assessment rolls for the respective years are unlawful, confiscatory, and unconstitutional.

The answer tenders the further issue that the City

of Arcadia during the years 1926 to 1932, inclusive, made no effort to assess the taxable personal property and intangible property of the said city. That no effort was made to collect or to enforce the payment of taxes against delinquent personal property of said city for the years named in the bill of complaint and for these and other reasons the property of the appellant is being unlawfully discriminated against in the effort to collect by foreclosing the void assessments.

It is alleged in the answer that the appellant had paid all county and State taxes on all the real property involved in the suit at bar and is ready and willing to do equity herein by the payment of and offers to pay a reasonable and lawful assessment for the years 1925 to 1936, inclusive, on the property described in the bill of complaint to the City of Arcadia immediately after the correct amount or amounts have been determined and fixed by the courts.

The lower court sustained a motion made by plaintiff below to strike the amended answer referred to as a counter claim on grounds: (a) the counter claim was without equity; (b) that the allegations thereof are vague and indefinite; (c) that the counter claim fails to set up a lawful defense; (d) that the counter claim is without merit. An amended counter claim was subsequently filed and stricken by an order of the chancellor.

Section 3 of Chapter 6323, Special Acts of 1911, being the then charter of the City of Arcadia, required that *all* property within the City of Arcadia be assessed by the city tax assessor at "its full cash value." The charter was subsequently amended and the assessment rolls previously entered by the officials of the City of Arcadia for the years 1924, 1925, 1926,

1927, 1928, 1929, 1930, and 1931, by Chapter 16309, Special Acts of 1933, were validated and confirmed for any and all purposes not amounting to a want of due process.

The original assessment of the appellant's property prior to the reduction order entered by the city council of Arcadia, *supra,* as disclosed by the bill of complaint of the City of Arcadia are viz.:

For the year 1926 the assessment was $52,500.00; for the year 1927 the assessment was $52,500.00; for the year 1928 the assessment was $51,000.00; for the year 1929 the assessment was $30,000.00; for the year 1930 the assessment was $20,000.00; for the year 1931 the assessment was $20,000.00; for the year 1932 the assessment was $16,000.00; for the year 1933 the assessment was $14,000.00; for the year 1934 the assessment was $12,000.00; for the year 1935 the assessment was $12,000.00; for the year 1936 the assessment was $ 8,000.00.

It is the contention of counsel for appellant that the tax assessor of the City of Arcadia by the provisions of Chapter 6323, Special Acts of 1911, was required to assess *all* property within the City of Arcadia at its full cash value, and that this charter provision has been violated by the tax assessor and the City of Arcadia for the years 1925 to 1936, inclusive: (1) in that there was no effort made to assess and collect taxes on (a) personal property and (b) intangible property for said years by the city; (2) that the assessment rolls for these years were not made by the tax assessor of the City of Arcadia but by a citizens' committee and the committee boosted the assessments to ten million dollars; (3) that the valuations as made and sought

to be enforced are fictitious, confiscatory and unconscionable; (4) that the assessment roll for the years 1925 to 1936, inclusive, are violative of Section 1 of Article IX of the Constitution of Florida in that the valuation of said property is unjust, arbitrary and discriminatory; (5) that appellant has paid all county and State taxes levied on her property; (6) appellant is willing to pay and offers to pay a just, reasonable and lawful assessment; (7) appellant offers to do equity; (8) the assessments as made by the citizens' committee for the years 1925 to 1936, inclusive, were not equalized by the board of equalizers of the City of Arcadia as required by Section 6 of Chapter 6323, Special Acts of 1911. The striking of the counter claim, which set up the foregoing defenses, deprived the appellant of the right and privilege of offering testimony in support thereof. The city council voluntarily reduced the assessments and waived the payment of interest, thereby acknowledging that the assessments were inflated, and filed suit to enforce payment of the amount, after allowing the reduction. Appellant contended the amount, after allowing the amount of reduction, was arbitrary, confiscatory, discriminatory and unconstitutional.

In the case of City of Tampa v. Palmer, 89 Fla. 514, 105 So. 115, suit was brought to set aside excessive valuations as made by the tax assessor and reflected in the assesment rolls for the years 1916 to 1920. The case was reviewed on appeal from a final decree, after the respective parties had offered testimony, and this court held that excessive valuations due to error in judgment, mistake or inadvertence not amounting to fraud cannot be reviewed in a court of equity. Mr. Justice Strum, in an able opinion, reviewed the author-

ities and stated the rule controlling the actions of courts of equity in similar cases. Mr. Justice Strum in part said (text 89 Fla. 530) :

". . . In order for equity to take jurisdiction, the case must be brought within some of the recognized principles of equity jurisdiction. Such a situation might be presented where an individual or specific assessment was so obviously and flagrantly excessive as to clearly impute to the assessor an intention to arbitrarily discriminate against the taxpayer, and circumstances resulting in a fraud upon the taxpayer are set out in the cases of Graham v. City of West Tampa, and Camp Phosphate Co. v. Allen, *supra,* under which equity would take jurisdiction. An *illegal* assessment, that is, an assessment wherein independent of the exercise of discretion as to value there appears prejudicial and material errors *in matter of law,* would also constitute grounds for equitable interference. But mere excessive valuation, resulting solely from inadvertence or mistaken judgment, and unaffected by any element of illegality in matter of law, or intentional or other abuse of authority, or fraud, express or implied, will not suffice as a ground of equitable jurisdiction."

In the case of City of Tampa v. Colgan, 111 Fla. 538, 140 So. 587, this Court had before it the legal sufficiency of an answer in which it was alleged that the assessment rolls for the years 1929, 1930 and 1931, as made by the tax assessor of the City of Tampa, were illegal, arbitrary and discriminatory in that the assessments were excessive in value and omitted from the assessment rolls for the respective years were millions of dollars of personal property. The opinion in the case *supra* is by Mr. Justice BUFORD, who in speaking for the Court, said:

" 'That the aforesaid action on the part of the tax assessor of the City of Tampa in assessing defendant's property in an amount double its valuation, and in omitting from the assessment roll for the years 1929, 1930 and 1931 millions of dollars of personal property, consisting of mortgages, notes, bonds, and other tangible personal property, and assessing defendant's only specie of property, real estate, at more than double its valuation, while undervaluing another specie of property, to-wit, personal property of the class hereinabove referred to and set out in paragraphs 5, 6, 7 and 8 of this answer was deliberate and intentional, and had the effect of illegally and unlawfully exempting to favorite taxpayers, corporations and individuals, large sums of money in the form of taxes, which should have been legally collected from said favorite taxpayers, and throwing the expense and burdens of government unjustly and illegally upon the property of this defendant, as a result of the total disregard of said tax assessor of the mandatory provisions of the Constitution and statutes of the State of Florida, and the charter of the City of Tampa, to assess all property, both real and personal, at a uniform and equal rate, except such property as may be exempt by law, and rendered the assessment against the property of this defendant for the years 1929, 1930 and 1931, null and void, and no tax can be legally collected thereon from this defendant.'

"The allegations of the above quoted paragraphs of the answer are sufficient to meet the rule stated by this Court in the case of West Va. Hotel Corp. v. Foster Co., *et al.,* 101 Fla. 1147, 132 Sou. 842, and in the case of Roberts v. American National Bank, 94 Fla. 427, 115 Sou. 261.

"In Lee v. Booker & Co., Inc., filed March 2nd, 1933, reported 146 Sou. 546, we said:

" 'Where it is obvious that the property overvalued was undoubtedly subject to taxation at some valuation, and not entitled to be entirely exempted by reason of an attempt to single it out and tax it while other property of the same class was being entirely ignored (Folsom v. Bank of Greenwood, 97 Fla. 426, 120 Sou. 317), and objection based on overvaluation must ordinarily be promptly asserted by judicial proceedings brought before tax sale or it will be deemed to have been waived by the taxpayer. Exceptions to this rule may exist but this case is not one of them.'

"We think this case presents one of the exceptions. The answer alleges the property involved was knowingly, willfully, and intentionally arbitrarily assessed at more than four times its actual cash value; that vast amounts in value of other property subject to taxation was knowingly, willfully, and intentionally omitted entirely from the tax roll and that defendant owned no property of the classes so omitted. It is also alleged, in effect, that other property of the class of defendant's property was assessed at or less than 50 per cent of its actual cash value and that such discrimination was knowingly, willfully and intentionally made. These allegations warrant further the allegation in the answer to the effect that the alleged illegal discrimination results in an unjust and illegal burden upon the defendant not placed in like manner on other taxpayers.

"In L. & N. v. Amos, 98 Fla. 250, 123 So. 745, we said:

" 'The law contemplates that assessing officers shall make just, fair and impartial valuation of property

for assessment purposes. And their valuations when made in the manner provided by law and with practical regard to existing conditions and circumstances of character, locality, use and other matters that may affect values, will in general not be disturbed by the courts, unless it appears that by intentional unjust discrimination, or by systematic, arbitrary action, there results manifest and gross inequality or injustice in fixing values, abstractly or relatively, showing an abuse of authority to determine values, for assessment purposes. German-American Lbr. Co. v. Barbee, 59 Fla. 493, 52 Sou. Rep. 292; Camp Phosphate Co. v. Allen *supra;* City of Tampa v. Palmer, *supra;* Chicago Great Western R. R. Co. v. Kendall, 266 U. S. 94, 69 L. Ed. 183. The duty to bear a just share of taxation, justice to other taxpayers, and the requirements of government, would make it inequitable to give relief from all taxation because there may be some inequality in assessment valuations.' "

See City of Tampa v. Colgan, 121 Fla. 218, 163 So. 577.

The City of Coral Gables brought suit to foreclose tax sale certificates on 36,000 tax liens on vacant property for the years 1928, 1929 and 1930. An answer was filed in which it was alleged that the several assessments were void in that there was an intentional, deliberate and systematic excess valuation on vacant lots and an undervaluation on improved property. See Coombes v. City of Coral Gables, 124 Fla. 374, 168 So. 524. The opinion was by Mr. Justice TERRELL, and he in part said (text 124 Fla. 379-80) :

"The cases relied on by appellee support the general rule that where relief in equity is sought from payment of alleged invalid assessments of authorized ad

valorem taxes as distinguished from a tax assessment that is void because not authorized by law, the complainant is required as a condition precedent to do equity by paying all taxes that legally could have been and were levied though not properly assessed against the property by the taxing unit, whose assessment is challenged as being invalid.

"The cases relied on by appellants support the general rule that if taxing officers intentionally commit an illegal act with a fraudulent purpose in the matter of making assessments, as where taxable property is intentionally omitted from the roll for an improper purpose or where property is purposely overvalued or taxpayers are purposely discriminated against the entire assessment is illegal and void but if the omission to assess taxable property arises in consequence of a *bona fide* belief on the part of the taxing officers that the omitted property is exempt from taxation or results from inadvertence or negligence, without any intent on their part to impose additional or unequal burdens upon other taxpayers, the assesment will not be held to be void. . . .

"The law requires that valuations of property for taxation must have some relation to the actual value of the property and that there must be no substantial inequalities in them. If the required procedure is not substantially followed and the valuations are found to be unjust relatively or abstractly the assessments will be held invalid." See Draughon v. Heitman, 124 Fla. 24, 168 So. 838.

The case of Louisville & Nashville R. R. Co. v. Amos, 98 Fla. 350, 123 So. 745, was a suit brought by several railroads against the State Comptroller to restrain the enforced collection of taxes for the year 1927 on per-

sonal property of the railroads. The point in issue was the valuation of 20 per cent of the actual value of the personal property. The State contended that the valuation was more than the 20 per cent of the cash value. This Court, in considering intentional over and under assessed valuations for taxation purpose, in part said (text 98 Fla. 356-57):

"While it is uniformly held that mere errors of judgment by taxing officials in making assessments of property for taxation, will not constitute a proper basis or support for claims of unjust discrimination, yet, on the other hand it is equally well settled, in this and other jurisdictions, that intentional, systematic, undervaluation by taxing officials of other taxable property of the same class, which, in effect, amounts to an intentional violation of the essential principles of practical uniformity, contravenes the constitutional rights of one whose property is overvalued. Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 So. 503, Sioux City Bridge Co. v. Dakota County, 260 U. S. 441, 67 Law Ed. 340; Sunday Lake Iron Co. v. Township of Wakefield, 247 U. S. 350, 62 L. Ed. 1154; City of Tampa v. Palmer, 89 Fla. 514, 105 So. 115.

"Uniformity and equality of rate and just valuation are required. Unlawful discrimination is forbidden. Where illegal discrimination is practiced, it is immaterial whether it is effected by a single assessing board, or through the action of two independent boards or officials. Baker v. Druesedow, 263 U. S. 137, 68 Law. Ed. 212. The assessment is by the State. It is an exertion of sovereign power. That two or more administrative agencies may be employed, is merely incidental. Unlawful discrimination by one taxing official or board can not be justified or excused on the

ground that it was not informed of the action of other taxing officials. But in this case the bill alleges and the demurrer admits that the defendant did know of the lower valuation of like property by local tax assessing officers.

"It is also well settled that a taxpayer, although assessed on a basis of not more than full value, may be unlawfully discriminated against by undervaluation of property of the same class of other taxpayers. Southern Ry. Co. v. Watts, 260 U. S. 519, 67 Law Ed. 375. And this may be true, although the discrimination is effected through the action of different taxing officials. Greene v. Louisville & I. R. Co., 244 U. S. 499, 61 Law. Ed. 1280."

See City of West Palm Beach v. Eppelman, 132 Fla. 686, 181 So. 894; Buchanan v. City of Tampa, 134 Fla. 618, 184 So. 104; The Arundel Corp. v. Sproul, 136 Fla. 167, 186 So. 679.

It is admitted that the assessed valuation of the property during the years 1926 and 1927 was placed at the sum of $52,500. During the month of March, 1939, the city council of Arcadia reduced the assessed valuation from $52,500.00 to the amount stated *supra*. We have the property assessed in 1926 and 1927 at the sum of $52,500.00 and in 1936 Lots 6 to 13, inclusive, of Block 1, were assessed at $13,000.00, and Lots 4 and 5, with other Lots of Block 1, in 1936 were assessed for $8,000.00 These assessments were not made as shown by the stricken answer by the tax assessor as provided by the city charter, but by a committee of citizens interested in boosting the assessed valuations of property of the City of Arcadia and as a result, the same were made to total ten million dollars. These assessments as made by the citizens' committee were

never equalized or approved by the city council of said city. The power to levy and collect taxes is granted by the charter and the charter provisions must be followed if the tax certificates are to be sustained. The allegations of fraud as tendered by the stricken answer presented serious questions going to the validity of these assessment for the years 1926 to 1936, inclusive. The appellant submits herself to the jurisdiction of the court and offers to do equity by paying for the years from 1926 to 1936, inclusive, such assessed valuations as are contemplated by Section 1 of Article IX of the Constitution of Florida, which she asserts must be a "just valuation." There is much in the record that appears to establish her contention.

*All* the courts of Florida under the provisions of Section 4 of the Declaration of Rights of the Constitution of Florida are open at all times to hear and consider complaints of injuries done to persons in their lands, goods, person or reputation and to see that right and justice shall prevail. It was error on the part of the chancellor to strike the amended answer referred to as a counter claim filed on February 5, 1940. While the stricken answer is by no means a model pleading, it contains meritorious allegations therein that contain equity and these allegations, coupled with the undisputed testimony as to excessive valuations, present fundamental issues upon which testimony should be taken as to the valuation provided for in the charter of said city, and after the lawful valuations have been determined for the years 1926 to 1936, inclusive, a final decree should be entered therefor.

I think the decree appealed from should be reversed.