THE HARVEY BUILDING CORPORATION v. FRANK M. HANNON, as Tax Collector, City of West Palm Beach; FRANK M. HANNON, as Tax Collector, City of West Palm Beach, v. THE HARVEY BUILDING CORPORATION.

191 So. 784
Division A
Opinion Filed October 31, 1939
Rehearing Denied November 20, 1939

400

*Fisher & Hamner,* for The Harvey Building Corporation, Appellant-Appellee;

*Paul W. Potter* and *F. P. Fleming,* for Frank M. Hannon, as Tax Collector of the City of West Palm Beach, and as Solicitors for Francis B. McGarry, as Tax Collector of the City of West Palm Beach, Appellee-Appellant.

PER CURIAM.—In this case the circuit judge filed an opinion as follows:

"This proceeding was brought by the plaintiff to have certain alleged excessive and discriminatory taxes upon the lands of the plaintiff described in the bill of complaint cancelled and set aside. The statutory provisions (Secs. 1038-40) conferring jurisdiction on the court to 'inquire into and determine the legality, equality and validity' of any tax assessment or toll have been complied with. Plaintiff contends (1) that the taxes on its property for the years 1933, 1934, and 1935 were not assessed on an equal and uniform basis, its property being discriminated against in that its lands were assessed at a valuation in excess of the actual cash value while other properties, especially residences, were assessed at one-third of the actual cash value; and (2) that the property having been assessed at a valua-

tion in excess of the actual cash value the excess tax should be cancelled.

"The evidence as to the first contention that plaintiff has been discriminated against is insufficient to overcome the direct and positive assertion of the tax assessor that he did not assess residences or any other properties on a basis of one-third of the actual cash value for the years in question. The second contention because of the conflicts in the evidence and the wide variance in the testimony as to the actual cash value of the property presents a more difficult problem.

"In weighing and reconciling the conflicting evidence the presumption must be indulged that the tax assessor performed his duties in accordance with the applicable provisions of law and the burden of proof is upon him who asserts to the contrary.

"The valuations appearing upon the assessment rolls are as follows: 1933, building, $171,000, and land $14,100, making a total of $185,100; 1934, building, $140,000 and land $14,100, making a total of $154,100; 1935, building, $135,000, and land $14,100, making a total of $149,100. No complaint is made as to the valuation of the land for either of these years. Plaintiff avers that the actual cash value of the building was $100,000, $110,000 and $115,000 for the respective years, the increase in value for each year being attributed to better economic conditions. The valuation placed on the land and building by the various witnesses ranges from $90,000 to $220,000 for 1933, $90,000 to $235,000 for 1934, and $100,000 to $250,000 for 1935. My conclusion is that the valuations for two of the three years is too high.

"Plaintiff contends that the valuation placed on the building for the year 1936, is excessive; that said valuation is

more than double the actual cash value; and that the tax assessor used an illegal method in determining the value in that the only factors considered by him were replacement cost less depreciation and obsolescence. Much testimony was taken in an effort to show that the tax assessor did in fact consider all proper factors in arriving at the valuation which he placed thereon, but I am impressed with the conviction that sufficient consideration was not given to present market value, the earning capacity of the property, the cost of operation and upkeep, and other factors which may vitally affect the actual cash value. There was in fact no market even at the valuation of $149,100 for 1935, the lowest value fixed for either of the three years, the owner having testified he would have been willing to sell for less than that figure.

"Defendant vigorously contends that plaintiff cannot maintain this action, no allegations having been made that property of plaintiff had been discriminated against for 1936 by fixing a valuation ratably higher than other property in the city, thus violating constitutional and statutory provisions which require equality and uniformity in taxation and there being no evidence of such discriminaton, plaintiff cannot maintain this action. The case of Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 So. 503, is cited in support of this contention. There it was held that where all property was assessed at 50 per cent of its true cash value the statute requiring equality and uniformity had been complied with. From this defendant reasons that if all property is uniformly assessed in excess of its true value plaintiff cannot complain. With this, I cannot agree, for to do so would ignore that provision of the statute that 'in no event shall such valuation exceed the actual cash value of said property.' Courts must give effect to every statutory provision,

and my conclusion is that in an appropriate proceeding such excess valuation may be set aside when no other relief is sought. This is the construction I place upon the holdings in the cases of West Virginia Hotel Corp. v. Foster, 132 So. 842, and City of Tampa v. Colgan, 163 So. 577. It is not necessary to decide the point in this case but I incline to the view that the rule enunciated in the Camp Phosphate Co. case is applicable where plaintiff contends that the entire tax roll is void because of inequalities in the assessments, and not in a case where it is sought to set aside excess valuations only.

"All of the testimony in this case was taken before me and in determining the excess valuations hereinafter set out I have given careful consideratoin to all of the evidence submitted. I have also read practically every case cited but have based my decision largely upon the more recent decisions of our own court. Applying the principles of law as expressed in these cases to the facts of this case, my conclusion is that the assessed valuation of the building should be reduced from $171,000 to $120,000 for the year 1933, and from $140,000 to $125,000 for the year 1934. The assessed valuation of the building for 1935 is $135,000. The owner admits a value of $115,000. The assessed valuation for this year should not be reduced, as I do not believe the presumption that the tax assessor was correct in his valuation has been overcome by the evidence. The margin of difference is too small to charge him with error except upon the clearest and most convincing proof.

"For the year 1936 I am convinced that the assessment is so greatly in excess of the actual cash value as to amount to a legal fraud. I am also convinced that the assessor failed to give sufficient consideration to the more important factors entering into the valuation for assessment purposes,

and that too much importance was given to the factor of replacement cost less depreciation and obsolescence. That this factor is one of prime importance cannot be denied, but it should not be allowed to outweigh all others in determining the actual cash value. With all the influencing factors allowed for, I am of the opinion that the true cash value of the building for the year 1936 did not exceed $150,000 and that the owner is entitled to have the assessment reduced to that figure from $303,280 as fixed by the tax assessor.

"The testimony to the effect that the net earnings could be materially increased by eliminating certain fixed charges and operating costs, and by an increase of receipts from rentals has not been overlooked. I am not prepared to say that all of the expenses charged to the operation of the building are proper charges, but with efficient and satisfactory management, which is conceded, I fail to see where the net returns could be increased very much. Neither do I see where a larger gross revenue can be scured under present conditions or in the immediate future. Other large office buildings, well located, with good management and comfortable offices, though not quite so attractive as the Harvey Building, furnish competition which cannot be ignored in determining the amount to be charged for office space. It is to be noted that this building was erected about the close of the boom period, and that it was materially affected by the depression which followed. While each economic phase should be considered the true cash value cannot be determined by considering either alone. It is also to be noted that business conditions have shown improvement over the four years here involved, and with improved economic conditions, rentals have increased. Prospective increased future earnings should be, and have been, considered in this inquiry with the expectation that there will

be a normal, but not speculative, increase in the actual value of this property."

Thereupon, the final decree was made and entered as follows:

"This cause came on for final hearing upon the pleadings and evidence, and the court having heard the argument of counsel for the respective parties and being fully advised in the premises, it is, thereupon

"Ordered, Adjudged and Decreed as follows:

"1. That the part of the valuations placed by the Tax Assessor of the City of West Palm Beach for tax purposes upon the building erected upon the following described property, to-wit: The North 97 feet of Lot 7 and the North 97 feet of the West 37.5 feet and East 12.5 feet of Lot 6, Block 6, original town of West Palm Beach, according to the plat thereof on file in the office of the Clerk of the Circuit Court in and for Palm Beach County, Florida, in excess of $120,000 for the year 1933, $125,000 for the year 1934, and $150,000 for the year 1936, be, and the same are hereby declared excessive, illegal and discriminatory, and that they be, and the same are hereby declared null and void, and are cancelled to the extent of such excess.

"2. That the taxes on said property legally due to the defendant, City of West Palm Beach, for the years 1933 to 1936, inclusive, are as follows:

| Year | Valuation | Millage | Amt. of Taxes |
|------|-----------|---------|---------------|
| 1933 | $134,100 | 55 | $ 7,375.50 |
| 1934 | 139,100 | 49 | 6,815.90 |
| 1935 | 149,100 | 50 | 7,455.00 |
| 1936 | 165,080 | 33 | 5,127.64 |
| | | | $26,774.04 |

—less the amount now in the registry of the court, to-wit: $12,570.50.

"3. That the said sum of $12,570.50 be paid over forthwith to the Tax Collector of the City of West Palm Beach by the clerk of this court, and that the plaintiff pay to the said defendant, City of West Palm Beach, the further sums herein declared to be due without interest, within thirty (30) days from the date of this decree together with any further costs of this proceeding.

"4. That upon the payment of the sums herein provided the tax certificates heretofore issued for either of the years 1933 to 1936, inclusive, by the City of West Palm Beach be, and the same are hereby cancelled together with all subsequent and omitted taxes for either of said years."

The final decree was amended, as follows:

"This cause came on to be considered by the court upon its own motion, and it appearing from an inspection of the final decree entered herein that in the second numbered paragraph of the said decree the valuation and the amount of taxes for the year 1935 as assessed by the Tax Assessor of the City of West Palm Beach was held to be valid by the court, and that, therefore, the certificate issued thereon for said year draws interest from the date of the issuance of said certificate, and that in and by the third numbered paragraph of said final decree the court ordered that the said sums decreed to be paid should be without interest, and that the said final decree should be modified so as to require interest to be paid upon the tax certificate for the taxes levied for the year 1935; and it further appearing from an inspection of the second numbered paragraph of said final decree and the figures therein shown relative to the valuation, millage and taxes, for the year 1936, that 33 mills upon a valuation of $165,080.00 would and should be $5,447.64 instead of $5,127.64, and that the figure shown in the last column in said paragraph as the amount of taxes

for the year 1936 and the figure representing the total in said column should be changed and amended accordingly;

"It is thereupon ORDERED, ADJUDGED AND DECREED that the said third numbered paragraph of said final decree be and the same is hereby modified by adding the following proviso, to-wit:

"Provided that the sum of $7,455.00, the amount of taxes levied upon the property involved in this suit for the year 1935 shall bear interest as provided by law from the date of the issuance of the tax certificate.

"And it is ORDERED, ADJUDGED AND DECREED that the second numbered paragraph of said final decree be and the same is hereby modified by substituting in the last column of figures in said paragraph the figure $5,447.64 for the present and erroneous figure of $5,127.64, and by substituting in said column as the total thereof the figure $27,094.04 for the present total figure of $26,774.04."

Complainant entered appeal and assigned errors, as follows:

"1. That the said Circuit Court erred in entering its final decree of May 28th, 1938, and filed and recorded on May 31st, 1938, in Chancery Order Book No. 138 at page 117, as amended by that certain order amending final decree dated June 9th, 1938, and filed and recorded June 10th, 1938, in Chancery Order Book No. 138 at page 262, of the records of said court, in finding and determining that the tax rolls of said City for the years 1933, 1934, and 1935 were upon the basis of 100% of actual cash value.

"2. That the said Circuit Court erred in entering its final decree dated May 28th, 1938, and filed and recorded on May 31st, 1938, in Chancery Order Book No. 138 at page 117, as amended by that certain order amending final decree dated June 9th, 1938, and filed and recorded June 10th,

1938, in Chancery Order Book No. 138 at page 262, of the records of said court, in finding that said City, its tax assessor and other administrative officers purported to and did determine the assessed values of taxable properties within said City upon the tax rolls for the years 1933, 1934, and 1935, at 100% of the actual cash value thereof, respectively.

"3. That the said Circuit Court erred in entering its final decree dated May 28th, 1938, and filed and recorded on May 31st, 1938, in Chancery Order Book No. 138 at page 117, as amended by that certain order amending final decree dated June 9th, 1938, and filed and recorded June 10th, 1938, in Chancery Order Book No. 138 at page 262, of the records of said court, in finding and determining that the property in litigation should be valued by the court for City taxation for the years 1933, 1934, and 1935 at the full actual cash value thereof in each of said years, and in so valuing same in said final decree and order."

Defendant entered appeal and assigned as errors:

"1. That the said Circuit Court erred in entering its final decree dated May 28, 1938, and filed and recorded May 31, 1938, in Chancery Order Book 138 at page 117 of the Circuit Court of Palm Beach County, Florida, as amended by that certain order amending final decree dated June 9, 1938, and filed and recorded June 10, 1938, in Chancery Order Book 138 at page 262 of said Circuit Court of Palm Beach County, Florida, in finding and declaring that the part of the valuation placed by the tax assessor of said City for tax purposes upon the building erected upon the property described in said final decree in excess of $120,000 for the year 1933 was excessive, illegal and discriminatory and finding and declaring the same to be null and void and cancelling the same to the extent of such excess.

"2. That the said Circuit Court erred in entering its final decree dated May 28, 1938, and filed and recorded May 31, 1938, in Chancery Order Book 138 at page 117 of the Circuit Court of Palm Beach County, Florida, as amended by that certain order amending final decree dated June 9, 1938, and filed and recorded June 10, 1938, in Chancery Order Book 138 at page 262 of said Circuit Court of Palm Beach County, Florida, in finding, determining and declaring that the taxes on said property legally due to the defendant for the year 1933 to be the sum of $7,375.50 and the total valuation to be $134,100.00.

"3. That the said Circuit Court erred in entering its final decree dated May 28, 1938, and filed and recorded May 31, 1938, in Chancery Order Book 138 at page 117 of the Circuit Court of Palm Beach County, Florida, as amended by that certain order amending final decree dated June 9, 1938, and filed and recorded June 10, 1938, in Chancery Order Book 138 at page 262 of said Circuit Court of Palm Beach County, Florida, in finding and declaring that the part of the valuation placed by the tax assessor of said City for tax purposes upon the building erected upon the property described in said final decree in excess of $125,000 for the year 1934 was excessive, illegal and discriminatory and finding and declaring the same to be null and void and cancelling the same to the extent of such excess.

"4. That the said Circuit Court erred in entering its final decree dated May 28, 1938, and filed and recorded May 31, 1938, in Chancery Order Book 138 at page 117 of the Circuit Court of Palm Beach County, Florida, as amended by that certain order amending final decree dated June 9, 1938, and filed and recorded June 10, 1938, in Chancery Order Book 138 at page 262 of said Circuit Court of Palm Beach County, Florida, in finding, determin-

ing and declaring that the taxes on said property legally due to the defendant for the year 1934 to be the sum of $6,815.90 and the total valuation to be $139,100.

"5. That the said Circuit Court erred in entering its final decree dated May 28, 1938, and filed and recorded May 31, 1938, in Chancery Order Book 138 at page 117 of the Circuit Court of Palm Beach County, Florida, as amended by that certain order amending final decree dated June 9, 1938, and filed and recorded June 10, 1938, in Chancery Order Book 138 at page 262 of said Circuit Court of Palm Beach County, Florida, in finding and declaring that the part of the valuation placed by the tax assessor of said City for tax purposes upon the building erected upon the property described in said final decree in excess of $150,000 for the year 1936 was excessive, illegal and discriminatory and finding and declaring the same to be null and void and cancelling the same to the extent of such excess.

"6. That the said Circuit Court erred in entering its final decree dated May 28, 1938, and filed and recorded May 31, 1938, in Chancery Order Book 138 at page 117 of the Circuit Court of Palm Beach County, Florida, as amended by that certain order amending final decree dated June 9, 1938, and filed and recorded June 10, 1938, in Chancery Order Book 138 at page 262 of said Circuit Court of Palm Beach County, Florida, in finding, determining and declaring that the taxes on said property legally due to the defendant for the year 1936 to be the sum of $5,447.64 and the total valuation to be $165,080.00.

"7. That the said Circuit Court erred in entering its final decree dated May 28, 1938, and filed and recorded May 31, 1938, in Chancery Order Book 138 at page 117 of the Circuit Court of Palm Beach County, Florida, as

amended by that certain order amending final decree dated June 9, 1938, and filed and recorded June 10, 1938, in Chancery Order Book 138 at page 262 of said Circuit Court of Palm Beach County, Florida, in finding, determining and declaring that the taxes on said property legally due City of West Palm Beach in Palm Beach County, Florida, for the years 1933 to 1936, inclusive, to be in the aggregate principal sum of $27,094.04, less the amount in the registry of the court, to-wit, $12,570.50.

"8. That the said Circuit Court erred in entering its final decree dated May 28, 1938, and filed and recorded May 31, 1938, in Chancery Order Book 138 at page 117 of the Circuit Court of Palm Beach County, Florida, as amended by that certain order amending final decree dated June 9, 1938, and filed and recorded June 10, 1938, in Chancery Order Book 138 at page 262 of said Circuit Court of Palm Beach County, Florida, in decreeing that the plaintiff pay to the City of West Palm Beach the sums therein declared to be due without interest.

"9. That the said Circuit Court erred in entering its final decree dated May 28, 1938, and filed and recorded May 31, 1938, in Chancery Order Book 138 at page 117 of the Circuit Court of Palm Beach County, Florida, as amended by that certain order amending final decree dated June 9, 1938, and filed and recorded June 10, 1938, in Chancery Order Book 138 at page 262 of said Circuit Court of Palm Beach County, Florida, in cancelling the tax certificates issued for the years 1933, 1934 and 1936, conditioned upon the payment of the sums provided in said final decree, as amended."

It is noted that all testimony was taken in the presence of the chancellor.

The controlling question is whether or not the evidence

supports the findings of the chancellor. The evidence on many important phases of the controversy is conflicting and on the evidence the opinion and decree of the chancellor might reasonably have been otherwise than as entered but a careful perusal of the entire transcript discloses ample and substantial foundation for the conclusion reached. It is not made clearly to appear that the final decree as amended reflects reversible error and, therefore, the decree must be affirmed.

The costs shall be taxed equally between the parties appellant and appellee.

So ordered.

Affirmed.

TERRELL, C. J., and BUFORD and THOMAS, J. J., concur.

WHITFIELD, P. J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.